No. 37,841

WHITE EAGLE OIL COMPANY et al., *Appellees*, v. THE STATE CORPORATION COMMISSION OF THE STATE OF KANSAS, *Appellant*.

(214 P. 2d 337)

Opinion filed January 28, 1950.

*Jay Kyle*, general counsel, of Topeka, argued the cause, and *Harrison Smith*, special counsel, of Garden City, was with him on the briefs for the appellant.

*Daniel R. Hopkins*, of Garden City, and *George B. Collins*, of Wichita, argued the cause, and *E. C. Monnet*, of Tulsa, Okla., and *Oliver H. Hughes* and *C. L. Williams*, both of Wichita, were with him on the briefs for the appellees.

The opinion of the court was delivered by

SMITH, J.: This action was brought to review an order of the corporation commission. Judgment was for the plaintiff. Defendant has appealed.

The action arises out of activity of the commission to administer G. S. 1947 Supp., 55-701 to 713. This is commonly known as the gas proration statute. G. S. 1947 Supp., 55-703, provides that whenever the available production of gas from any common source of supply is in excess of the market demands for such gas or whenever the demands can only be fulfilled by production under conditions constituting waste or whenever the commission finds that the orderly development of and production requires the exercise of its jurisdiction, then

"Any person, firm or corporation having the right to produce natural gas therefrom, may produce only such portion of all the natural gas that may be currently produced without waste and to satisfy the market demands, as will

permit each developed lease to ultimately produce approximately the amount of gas underlying such developed lease and currently produce proportionately with other developed leases in said common source of supply without uncompensated cognizable drainage between separately-owned, developed leases or parts thereof."

The statute then confers on the commission power to regulate the taking of gas and to promulgate such rules and regulations as may be necessary and that before any gas shall be produced from any well, a certificate shall be obtained from the commission for the construction of the facilities necessary and for the utilization of the gas and the commission shall issue the certificate unless it finds after a hearing that the contemplated production of gas shall be in violation of the act.

Acting pursuant to the rule making and regulatory power conferred, the commission on March 21, 1944, after extensive hearings adopted what it termed the Basic Proration Order for the Hugoton Gas Field. It was properly filed with the revisor of statutes and its provisions have the force and effect of duly enacted statutes. (See G. S. 1947 Supp., 77-405 to 414.)

This basic order recognized that there were many problems common to all oil and gas leases. It first found the facts necessary to give the commission jurisdiction. After referring to several facts having a bearing, the commission found that one well could adequately and sufficiently drain the gas from 640 acres and that in the proration formula to be prescribed later in fixing the allowable production from a well the acreage feature should be 640. Paragraph (g) of this Basic Order then contained the following provisions:

"To be considered as attributable to a well, the acreage shall be contiguous or adjoining with the well located as near as practicable in the center thereof, and in no event nearer than 1250 feet from any boundary line of the unit; except, however, that this restriction shall not apply to leases or tracts which have already been unitized in compliance with previous orders issued by the Commission, or to wells now in existence and located on tracts containing less than 640 acres. Such wells, now in existence, and located on tracts containing less than 640 acres may be attributed acreage which is held by production from such well, if such acreage is located within a two mile radius of the well, or upon application, and after notice and hearing, the Commission may authorize the inclusion of acreage as being attributable to a well now in existence if the acreage lies within a three mile radius of the well and if upon hearing it is shown to the Commission that it is impossible or impracticable to unitize the tract upon which such well is located with other acreage lying within two miles thereof; provided however, that the Commission may, either

on complaint filed, or upon its own motion, after notice and hearing, exclude any acreage from inclusion in any unit which, in its judgment, is not productive and which should not be considered as proven acreage."

Paragraph (*h*) provided, in part:

"It shall be lawful for the owners of two, or more separately owned tracts of land, or, of the minerals located thereunder, by appropriate contract between such owners, to cause such lands or minerals to be consolidated as one production unit and to apportion the royalties accruing from the production of the well or wells, to be divided among them as they may agree and when such agreement shall have been made, the royalties arising from the production of the well or wells shall be allocated as the parties thereto may agree."

Paragraph (*j*) contained, amongst other provisions, the following:

"The adoption of a formula that will enable each well to currently produce its allowable and ultimately produce approximately the amount of gas underlying the lease upon which it is located is the object sought to be accomplished by this order. The testimony at the numerous hearings held by the Commission indicates that there are many factors which should be considered in connection with the formula, such as, acreage, pressures, open-flow, porosity and thickness of the pay. It is conceded by practically all of the witnesses that acreage is one of the most important of these factors and should be one of the factors included in the formula."

Paragraph (*k*) prescribed a formula by which the factor of deliverability of a well should be determined.

The application out of which this action grew was made on account of the provisions of Paragraph (*g*) that have already been quoted. The application alleged that the applicant was the owner of an oil and gas lease on the north half of section 10 and the south half of section 6; that it had bound itself to drill a gas well on these lands; that it had drilled a well on one of the quarters of the north half of section 10 and it had been completed as a producing well and applicant sought to unitize the two half sections into a 640-acre drilling unit; that the two tracts were not contiguous and the south half of section 6 was not adjacent to the tract upon which the gas well had been drilled; and if the two tracts were not permitted to be unitized either one or both of them would become isolated and unable to share in the gas production from the Hugoton field. The prayer was that the commission grant an exception to paragraph (*g*) of the Basic Order permitting the south half of section 6 to be attributed to the north half of section 10 and for an order fixing an allowable in accordance therewith. The Northern Natural Gas Company protested the application and filed as a part of its protest a map marked in this record as Exhibit 1. This map has been furnished us. It shows the north half of section 10 to be surrounded on all four sides

by land upon which Northern Natural Gas has an oil and gas lease and that at the nearest point the northern half of section 10 is two miles from the south half of section 6. After several hearings the commission issued an order reciting that the well drilled did not have 640 acres attributable thereto; that the applicant had a market for the gas produced from the well; that the granting of an exception to the provisions of said paragraph (g) of the Basic Proration Order would adversely affect and violate the correlative rights of land-owners who have adjacent or adjoining acreage; and that applicant's request for said exception should be denied.

The order was that the application for an exception to paragraph (g) be denied and that applicant be permitted to attribute to the well the 320 acres contiguous to the land upon which it was drilled.

In accordance with the statute, the applicant filed a petition for a rehearing on the ground that the order was contrary to the evidence adduced at the hearing; that the commission took into consideration factors not within its jurisdiction; that the denial of the application invoked an invasion of the rights of the mineral owners in the lands involved; that the order was arbitrary; that the order was incon-sistent with the previous orders of the commission wherein assign-ments of allowables were granted under similar circumstances; that the gas well affected by the commission's order was being drilled subject to the terms and provisions of an oil and gas lease executed by the United States of America under date of December 31, 1938, and antedated the date of basic proration order for the Hugoton Gas Field, and that the denial of the allowable for said gas well as prayed by applicants was an impairment of the lease contract and a viola-tion of the constitution of the United States; that the denial was a violation of the Fourteenth Amendment; that it was a violation of the constitution because it impaired the obligation of a contract; that all the acreage situated within two miles of the tract upon which the well was drilled, with the exception of two sections, was owned by the Northern Natural Gas Company and the evidence at the hearing showed that the Northern Natural would not unitize with applicant except on terms disadvantageous and the order of the com-mission operated unlawfully against the rights of applicant. After hearing, the commission found that an allowable had been assigned the well; that by this order applicant would be enabled to take from the well such portions of the gas as might be produced without waste and denied the rehearing. In due time applicant filed its action for a review in accordance with G. S. 1947 Supp., 55-707 and 55-606.

In this petition it first alleged facts about as they had been alleged in their application. It then alleged the filing of the application, the opposition of the Northern Natural Gas Company and the denial of its prayer. It further alleged that the issue before the commission was whether it should be entitled to an allowable based on an attributable acreage of 320 acres in accordance with the Basic Order or whether an exception should be granted in order that they might be assigned a full allowable based on 640 acres and that the commission's order denying that relief aggrieved them. The petition further alleged that the denial of their request involved a violation of the correlative rights of the mineral owners in the lands involved and resulted in a dissipation and waste of natural gas under the premises and resulted in an irreparable injury to the mineral rights of the owners. It further stated that the orders were not supported by any competent evidence; that they were contrary to the evidence; that the commission took into consideration factors regarding the price of gas and contractual provisions of gas purchase contracts not in the jurisdiction of the commission; were arbitrary and capricious and discriminatory against the plaintiffs. The petition then contained the following allegations:

"Plaintiffs further state that said orders of the Commission are inconsistent with previous orders of the Commission in determining matters involving the same issue, and, therefore, the action of the Commission does not result in the application of the gas proration statute of the State of Kansas, and the rules and regulations promulgated by the Commission, fairly, equally and uniformly to the entire area recognized by the Commission as being a common reservoir of gas."

It alleged the constitutional grounds already set out here, as contained in the application for a rehearing. It prayed that the orders of the commission be held unreasonable, illegal, arbitrary and null and void and asked that the order be superseded by the court and that the court assign an allowable for the well described, based on the south one-half of section 6, to be attributable to the north one-half of section 10. To this petition the defendants filed first a general denial and then a special denial of the allegations that the order was not supported by competent evidence and were discriminatory against plaintiffs. The answer also denied that the orders appealed from were inconsistent with previous orders of the commission. They further denied the constitutional grounds alleged.

The reply of the appellees was a general denial.

In accordance with G. S. 1947 Supp., 55-606, the applicant filed

with the clerk of the district court an abstract of the record of all the evidence and proceedings before the commission. The district court found the orders of the state commission were not supported by the complete record; that they were unfair and discriminatory and inconsistent with other orders of the commission made in matters involving same or similar issues and further found that they did not result in the application of the Gas Proration Statute and the regulations promulgated by the commission fairly, equally and impartially. The court set aside the orders of the commission inasmuch as it denied the assignment of an allowable for the well on the basis of 640 acres as attributable thereto. The court made a further order, as follows:

"That this action is hereby remanded to the State Corporation Commission with directions that it further consider its order of July 8, 1948, taking into consideration other orders of the Commission in regard to the same or similar situations as are under consideration herein, and enter its order assigning to the said gas well known as U. S. A. No. 1, an allowable based on the attribution thereto of the acreage described as the North Half of Section Ten (10) and the South Half of Section Six (6), Township 25 South, Range 34 West, Finney county, Kansas, constituting a full 640 acre allowable thereto."

The motion of the commission for a new trial was denied—hence this appeal.

The appellant assigns error that the court erred in overruling its motion for a new trial, in entering judgment, in making findings not predicated on evidence, in its finding that the order entered did not result in the application of the gas proration statute fairly and uniformly; that the court erred in remanding the matter to the commission requiring it to enter an order assigning an allowable to a gas well not in conformance with the commission's Basic Order; and the court erred in setting aside the commission's order.

Two of the questions first argued by the appellant are stated, as follows:

"1. Does a district court have jurisdiction to set aside an order of the State Corporation Commission made pursuant to a Basic Proration Order for a gas field in Kansas and to substitute its judgment for that of the Commission without authority either from the statute or by the Basic Proration Order for the field?

"2. Can a district court, without statutory authority, set aside and remand to the State Corporation Commission an order of the Commission, made pursuant to a Basic Proration Order for a certain gas field of Kansas and pursuant to statutory authority granted to said Commission, and direct said Commission to enter an order not in accordance with the Basic Proration Order and pertinent statutes?"

This argument sends us to an examination of the sections providing for review of actions of the commission. G. S. 1947 Supp., 55-707, is a section of the gas proration statute and provides that actions to review decisions of the commission may be brought and should be governed by the provisions of G. S. 1947 Supp., 55-606. This section is part of the oil proration statute.

It provides first for the venue of actions for judicial review of orders of the commission; next for the parties by whom such actions may be brought; and the time within which they may be brought. With none of these provisions are we concerned here.

The statute next contains a provision, as follows:

"Any rule, regulation, order or decision of the commission may be superseded by the district court upon such terms and conditions as it may deem proper."

The section then provides:

"In any such action an abstract of the record of all evidence and proceedings before the commission shall be filed by the complaining party and a counter abstract may be filed by the commission or any other interested party. The district court may, when it deems it necessary and in the interest of justice, remand any such action to the commission with directions that the same be further investigated or additional evidence taken by the commission."

The section then provides for further hearing and orders by the commission and then provides:

"The court shall not be bound by any finding of fact made by the commission. The authority of the court shall be limited to a judgment either affirming or setting aside in whole or in part the rule, regulation, order or decision of the commission."

It will be readily noted the above statute does not provide that the trial court should hear or consider any evidence other than what was heard and considered by the commission. To hold otherwise would be to hold that the provisions for the court remanding a proceeding for further hearing was meaningless. This is in accordance with our holding in *Southern Kansas Stage Lines Co. v. Public Service Comm.*, 135 Kan. 657, 11 P. 2d 985, also *Union Pac. Rld. Co. v. State Corporation Commission*, 165 Kan. 368, 194 P. 2d 939. In those cases we were considering G. S. 1935, 66-118 (d), the general statute for review of orders of the corporation commission. The provisions of it, however, and those of G. S. 1947 Supp., 55-606, are to the same effect. (See, also, *Wakefield v. State Corporation Comm.*, 151 Kan. 1003, 101 P. 2d 880.)

We gather from statements of counsel at the oral argument be-

fore us and from colloquy of counsel before the trial court as it appears in the record, the commission had in the past made orders permitting acreage to be unitized for the purpose of setting up a tract of 640 acres where some of the tracts were not contiguous. That such has happened must be conceded. Indeed such action is contemplated by the provisions of paragraph (*g*) of the basic order. The burden of the argument of appellees stated in its brief, is as follows:

"If, therefore, the Commission has granted exceptions to paragraph (*g*) of the Basic Order, it has a duty to grant further and additional exceptions where the refusal to grant such exceptions would result in discrimination, inconsistency and unfairness. The Commission does not have the power under the statute, or otherwise, to establish a rule and to depart from that rule only when it sees fit. By making exceptions to the rule in favor of certain producers, it gives the right to other producers to be granted similar exceptions where the same or similar facts exist."

The argument is certain companies have been permitted to unitize noncontiguous tracts in the past and to deny appellee the same right is to deprive it of a right and advantage other companies have had, hence, is to fail to administer the statute fairly and impartially, and to invade the correlative rights of the mineral owners under the land involved.

The trouble with that argument is it depends for its force upon whether in the other cases the same or similar facts existed. This record does not disclose such a situation. The case should have been tried upon the record brought to the attention of the commission at the hearings before it. It does not appear the attention of the commission was there called to orders it had made permitting the unitizing of noncontiguous acreage under circumstances similar to those prevailing here. Counsel state in their brief that counsel for the commission stipulated that such orders had been made. We have examined the record, especially the colloquy between counsel at the hearing in district court and do not find counsel went that far. That orders permitting unitization of noncontiguous acreage had been made could not be denied. That they were made under the same or similar circumstances, however, is something else.

The hearing before the commission was had pursuant to paragraph (*g*) of the basic order. That paragraph provides the commission may after notice and hearing authorize the inclusion of noncontiguous acreage, if it is shown it is impossible or impracticable to unitize the tract upon which the well is located without

acreage within two miles. This provision places a broad discretion in the commission. No one argues here that any producer has the privilege as a matter of right to unitize noncontiguous acreage. To so hold would be to render meaningless the provision for a hearing and notice and would impede if it did not strike down the general purposes of the act.

The appellee here, the applicant before the commission, had the burden not only of establishing that allowing the south half of section six to be attributed to the north half of section ten was necessary to prevent the two tracts from becoming isolated, thereby making it impossible for the tracts to share in the gas production from the Hugoton field. It also had the burden of establishing that such unitization would not adversely affect and violate the correlative rights of other landowners in the field who owned adjacent acreage. Several hearings were had. The testimony for the most part consisted of the story by a representative of the White Eagle on one hand and of the Northern Natural on the other of their negotiations in an effort to bring about a businesslike adjudgment of the matter. When it became apparent that these efforts had resulted in failure to agree the commission denied the order. In denying it, the commission found, in part:

"That the granting of an exception to the provisions of said paragraph 'G' of the Basic Proration Order would adversely affect and violate the correlative rights of landowners who have adjacent or adjoining acreage; and that applicant's request for said exception should be denied."

In its motion for a rehearing and later in its petition for review the appellee elaborated somewhat on the allegations of its original application. For instance, in its petition for a rehearing it made an allegation, as follows:

"That the order of the Commission is inconsistent with the previous orders of the Commission wherein assignments of allowable were granted under similar facts and does not result in the application of the gas proration statute of the State of Kansas, and the rules and regulations promulgated by the Commission, fairly, equally and uniformly to the entire area recognized by the Commission as being a common reservoir of gas."

No evidence was tendered the commission, however, to prove this allegation. In its petition for review an allegation of similar import was made, already quoted in this opinion. Since no evidence to prove this allegation had been offered the commission at the hearing before it, the allegation was unavailing when it was made because the trial court was limited in its consideration to evidence

introduced before the commission. This was the evidence counsel for appellee endeavored to bring to the attention of the trial court by means of stipulation, as we have already noted:

With such a record the trial court found:

"That the orders of the State Corporation Commission dated July 8, 1948, and August 4, 1948, in Docket No. 35,906-C (C-1930), are not supported by the complete record, and that said orders are unfair and discriminatory to plaintiffs, and inconsistent with other orders of said Commission made in matters involving the same or similar issues; and said orders do not result in the application of the gas proration statute of the State of Kansas and the rules and regulations promulgated by the Commission fairly, equally, and uniformly to the area recognized by the Commission as being a common reservoir of gas."

And entered judgment, as follows:

"That this action is hereby remanded to the State Corporation Commission with directions that it further consider its order of July 8, 1948, taking into consideration other orders of the Commission in regard to the same or similar situations as are under consideration herein, and enter its order assigning to the said gas well known as U. S. A. No. 1, an allowable based on the attribution thereto of the acreage described as the North Half of Section Ten (10) and the South Half of Section Six (6), Township 25 South, Range 34 West, Finney County, Kansas, constituting a full 640 acre allowable thereto."

It will be readily noted the trial court considered evidence which had not been offered the commission. Provision for such a contingency is in G. S. 1947 Supp., 55-606, where it is provided that:

"The district court may, when it deems it necessary and in the interest of justice, remand any such action to the commission with directions that the same be further investigated or additional evidence taken by the commission."

When it became apparent at the trial the White Eagle was relying on evidence that had not been presented to the commission it became the duty of the court to remand the action to the commission for further taking of evidence, as provided by the statute.

It follows that so much of the trial court's order as remanded the action to the commission for reconsideration was correct. That portion of it which directed the commission after consideration to enter its order assigning to the gas well an allowable based on the attribution thereto of the north half of section ten and the south half of section six was incorrect. The order should have been simply that the action was remanded to the commission with directions that it further consider its order.

The judgment of the trial court is reversed with directions to enter judgment in compliance with the views expressed herein.