CROSBY STEVENS, J. CLAIR STEVENS, J. CLAIR STEVENS, Administrator of the Estate of Gene Stevens, Deceased, *Appellees*, v. STATE CORPORATION COMMISSION OF THE STATE OF KANSAS, *Appellant*.

No. 41,316

WALTER KUHN, N. APPLEMAN, TREES OIL COMPANY, H. E. ZOLLER, G. J. NEUNER, HOWARD KUHN and L. O. STANLEY, *Appellees*, v. STATE CORPORATION COMMISSION OF THE STATE OF KANSAS, *Appellant*.

No. 41,317

SOUTHWEST KANSAS ROYALTY OWNERS ASSOCIATION, *Appellee*, v. STATE CORPORATION COMMISSION OF THE STATE OF KANSAS, *Appellant*, and SOUTHWESTERN EXPLORATION COMPANY, Intervenor, *Appellant*.

(341 P. 2d 1021)

Opinion filed July 10, 1959.

*Clyde E. Milligan*, general counsel, State Corporation Commission, of Topeka, argued the cause, and *J. Robert Wilson* and *Hartzell J. Whyte*, assistant general counsels, of Topeka, were with him on the briefs for the State Corporation Commission, appellant.

*Richard Jones*, of Wichita, argued the cause, and *A. W. Hershberger*, *William P. Thompson*, *H. E. Jones*, *Jerome E. Jones*, and *Robert J. Roth*, all of Wichita, and *Charles Vance*, of Liberal, were with him on the brief for the Southwestern Exploration Company, intervenor, appellant.

*Mark H. Adams*, of Wichita, argued the cause, and *Charles E. Jones*, *William I. Robinson*, *J. Ashford Manka*, *Clifford L. Malone*, *Mark H. Adams, II*, and *John S. Seeber*, all of Wichita, and *Harry O. Janicke* and *John A. Herlocker*, both of Winfield, and *Ray H. Calihan*, *Logan N. Green*, *Daniel R. Hopkins*, and *Ray H. Calihan, Jr.*, all of Garden City, were with him on the brief for Crosby Stevens, J. Clair Stevens, J. Clair Stevens, Administrator of the Estate of Gene Stevens, deceased, appellees in case No. 41,315; and Walter Kuhn, N. Appleman, Trees Oil Company, H. E. Zoller, G. J. Neuner, Howard Kuhn and L. O. Stanley, appellees in case No. 41,316.

*Robert T. Cornwell* and *Dale M. Stucky*, both of Wichita, argued the cause, and *Homer V. Gooing*, *Wayne Coulson*, *Paul R. Kitch*, *Donald R. Newkirk*, *Robert J. Hill*, *Gerrit H. Wormhoudt*, *Philip Kassebaum*, *John E. Rees*, and *Willard B. Thompson*, all of Wichita, *A. E. Kramer*, and *Bernard Nordling*, both of Hugoton, and *Hugo T. Wedell*, of counsel, of Wichita, were with them on the brief for Southwest Kansas Royalty Owners Association, appellee in case No. 41,317.

The opinion of the court was delivered by

JACKSON, J.: This opinion covers three proceedings brought for judicial review of a single order of the State Corporation Commission. The commission's order was made under the jurisdiction conferred upon it by the statute regulating the production and conservation of natural gas (G. S. 1949, Chapter 55, Article 7). The order concerned the application of the Southwestern Exploration Com-

pany to attribute another 160 acres to a gas well located on a quarter section in Haskell County. The lease sought to be attributed is some ten miles distant from the well and in Seward County.

After due notice and hearing the commission allowed the application. As shown in the above caption, three separate proceedings for review were filed by the appellees herein and the Southwestern Exploration Company intervened therein. These matters were consolidated for trial in the district court and have been consolidated on appeal to this court. The district court after hearing the arguments of the parties and reviewing the record before the commission set aside the commission's order. The commission and the intervenor have now perfected their appeals to this court.

A historical review of the statutes and facts will be helpful before taking up the questions raised in this appeal. The corporation commission was first given authority over the production and conservation of natural gas by Laws of 1935, Chapter 213, and this statute was amended by Laws of 1945, Chapter 233, which now is found in G. S. 1949, Chapter 55, Article 7. It will be noted that section 55-706 of the act was amended in 1957 and appears in the supplement to the statute, but this amendment has no application to the instant case.

In 1944, the corporation commission issued what is known as the basic proration order for the Hugoton field. This order was made after rather extensive investigation and the commission found that one gas well could adequately and sufficiently drain 640 acres of land without causing waste and therefore, fixed 640 acres as the unit of land to be attributable to a gas well for full allowable operation. Paragraph "g" of this basic order is important in this case, and the text of paragraph "g" is appended to this opinion. It will be noted that if a gas well does not have as much as 640 acres attributable to it, it shall be rated by the fraction of acres based upon 640 acres. In this basic order, it was provided that as to wells for the future, acreage might be attributable to the well if "contiguous or adjoining." There is no other provision for attributing acreage except as to wells existing at the time of the order. It is well known that the commission upon application and hearing, has in numerous cases attributed acreage which was not contiguous or adjoining, but the basic order has never been amended in this particular.

A short statement of facts will show how the present controversy arose. Sometime prior to February 1, 1956, the intervenor, South-

western Exploration Company, hereinafter referred to as Southwestern, drilled their gas well on a quarter section in Haskell County which is described in the record, but which we shall refer to as the Herron tract. Although this gas well was a producing well, it could not be put into production without having an allowable assigned thereto by the corporation commission. By an application filed in February of 1956, Southwestern attempted to attribute to the Herron tract and the well thereon some 480 acres located some twenty-two miles from the Herron tract. This application was denied by the commission by order of February 28, 1956. Thereafter, by order dated April 4, 1956, the Herron 160 acres was attributed to the well thereon and there is no question concerning this order.

Later, Southwestern filed an application to attribute to the Herron tract a quarter section located in Stevens County some thiry-four miles distant from the Herron tract. This application was allowed by the commission by order of May 29, 1956, and the Herron well was thus given a rating of 320 acres. There was no appeal from this order and it is not questioned in this appeal.

On October 4, 1956, Southwestern made another application by which they sought to attribute to the Herron tract a quarter section located in Seward County which is known as the Prater tract. The Prater tract is approximately ten miles distant from the Herron tract. A hearing was had upon this application and the Prater tract was attributed to the Herron tract by order of the commission dated November 8, 1956. After petitions for rehearing had been denied, the appellees herein filed their appeals to the district court.

After a hearing on the matter in the district court, the district court held that the order appealed from was invalid in that it was in violation of the general basic proration order for the Hugoton field and therefore, set the special order aside. The principal question on this appeal is as to the correctness of the order of the district court.

It may be noted that not all of the appellees are in agreement as to the order appealed from. Only the appellees in case No. 41,317 contend that the special order could not be issued because it was contrary to or an exception to the provisions of the general proration order. The other appellees, the intervenor and the corporation commission all contend that special orders in the nature of exceptions to paragraph "g" of the basic order may be granted. It is

pointed out that under the provisions of the statute, the same notice is given for the hearing on a special order as was given for the making of the general order. The commission further points out that the basic order contained a "saving clause" which reads as follows:

"The Commission hereby retains continuing jurisdiction of the subject matter hereof and of the parties hereto for the purpose of issuing from time to time such further order, amendments, additional order, rules and regulations as may be necessary and proper in the premises."

The commission further points out that under the general rules and regulations for the conservation of natural gas, rule 82-2-200 reads as follows:

"Special Rules, Regulations and Orders will be issued when required and shall prevail as against General Rules, Regulations and Orders if in conflict therewith."

It will also be noted that the statement made in the case of *White Eagle Oil Co. v. State Corporation Comm.*, 168 Kan. 548, 214 P. 2d 337, to the effect that the basic proration order for the Hugoton gas field had been filed with the revisor of statutes as provided by G. S. 1949, 77-405 was in error, and that said order has never been filed. The commission points out that it has no statewide application and therefore, is not perhaps eligible for filing.

At the time this case was before the district court, the court had several review proceedings pending, all of which involved various questions relating to action by the corporation commission on exceptions to the basic proration order for the Hugoton gas field. In the findings of fact and conclusions of law in this record, the district court referred to the detailed opinion filed in a companion case entitled *Day v. State Corporation Commission* which likewise is now before this court on appeal and which is being decided this day, see *Day v. State Corporation Commission*, No. 41,102. Since this court believes that the legality of exceptions to the basic order can more easily be decided in this opinion, we shall set out here a part of the opinion of the learned trial judge in the record in the Day case. The opinion reads in part as follows:

"The Commission legislates by exceptions when it allows or grants an exception to the Basic Order without first amending the Basic Order to provide for an exception according to a standard or within a frame work and boundary for its guide and for the guide of all producers and owners of gas interests in the Hugoton Gas Field. If the Commission can make exceptions

to the rules contained in the Basic Order then it could likewise make exceptions to the requirements and restrictions contained in the Statutes.

"The Commission may amend the Basic Order and its other rules, from time to time as needed, and thus provide for the granting of exceptions just the same as the Legislature can amend or repeal statutes. The granting of exceptions without amending its rules amounts to a quasi-judicial repeal or amendment of the Basic Order without exercising its legislative authority in adopting new rules to replace the rules amended or repealed. Persons taking or producing gas from the Hugoton Gas Field have the right to and must know the restrictions, if any, that are imposed as a prerequisite to the taking of gas. The Commission by its granting of exceptions to the Basic Order, without amending the order, has made it impossible for any producers or operators in the Hugoton Gas Field to know what they can or cannot do without going through all of the exceptions orders made by the Commission.

"As applied by the Commission, the exceptions are the rules. Since such exceptions are based on individual instances, no standard or guide for exceptions are established to guide such producers, except such as can be determined after the examination of each exception order. The making of rules by means of granting exceptions amounts to no rules whatsoever. As contended by the Commission, it is the making of laws or rules as the occasions arise, which certainly is not a guide for anyone wishing to avail himself of the privilege of producing gas in the Hugoton Gas Field. It amounts to rule by man, rather than rule by law. It is true that the Commission is very busy and no doubt over worked and it would take considerable time for the Commission to send notices and take testimony as they would have to in amending the Basic Order, or any of its other rules to take care of what they may consider a hardship case. However, unless this is done, the people of Kansas have no rule or guide to conduct them in their operations in the Hugoton Gas Field. If a person had an oil or gas lease covering 160 acres in the Hugoton Gas Field and wanted to drill a well and unitize it with other lands in order that he would have a full 640 acre producing allowable and he went to any lawyer in this state or to the Commission, its attorneys, or any of its employees, to find out what other lands he could unitize with the said lease, he would be unable to get this answer under this practice of granting exceptions as practiced by the Commission. A lawyer could only tell him to acquire leases in the Hugoton Gas Field on 480 additional acres, then file an application for an exception to the Basic Order and if no one appears in opposition, he might get an exception order. The only rules that could safely guide him are incorporated in the Basic Order and they do not provide for the exception which the Commission attempted to grant in this case.

"If the Commission feels that the 'adjoining or contiguous' provisions in Section 'g' are not sufficient to take care of these cases, they could, on their own or other motion, call a hearing for the purpose of amending such section and then change the Basic Order to provide for exceptions with a frame work, standard or guide that would be applicable to all producers and landowners in the Hugoton Gas Field.

"If the Commission can by means of orders, grant exceptions to the Sec-

tion 'g' of the Basic Order and mainly to the words 'contiguous or adjoining', it can also grant exceptions in the same manner and to the same extent to all of the various other provisions in this Basic Order and the statutes and thus by individual exceptions repeal piecemeal all the general rules and guides of the Basic Order and the statutes without substituting other general rules and guides in place thereof.

.    .    .    .    .    .    .    .    .    .    .    .    .    .

"Under such a conception the Basic Order serves no purpose. Paragraph granting the exception herein to specifically named parties and affecting specifically described land, is a 'Rule, Regulation and Order' as such words are used in Rule 82-2-200 of the Conservation Code, the Statutes of Kansas and the Basic Order.

"Under such a conception the Basic Order serves no purpose. Paragraph 'g' of the Basic Order provides that gas leases must be adjoining and contiguous in order to receive a production allowable and no applicable exception is provided for therein. Under such an interpretation every section of the Basic Order can be repealed, amended and ignored by the Commission through the means of individual exceptions.

"The granting of exceptions by the Commission, without rules providing for exceptions wherein such rules act as a standard, frame work and guide within which to apply such exceptions, is special legislation and unconstitutional."

This court fully agrees with the learned judge of the district court that it was erroneous and contrary to the general rules of administrative law for the commission to promulgate a general order for the guidance of the people interested in the Hugoton gas field and then to embark on a practice of granting or denying exceptions to the basic order without amending that order to advise the public as to what the "ground rules" are to be. We think such a practice is unlawful and agree with the trial court's order setting aside the order here being reviewed. We further direct attention to the power of the courts in reviewing orders made by the commission under G. S. 1949, 55-707 and 55-606.

However, we disagree with the conclusion of the trial court that such orders granting exceptions without amending the basic order were made without jurisdiction and were unconstitutional as special legislation. It would appear that the district court was influenced in this conclusion by the case of *H. F. Wilcox Oil & Gas Co. v. State,* 162 Okla. 89, 19 P. 2d 347, 86 A. L. R. 421. The constitution of the state of Oklahoma differs quite radically in its provisions from our own state constitution. In *Kansas-Nebraska Natural Gas Co. v. State Corporation Commission,* 169 Kan. 722, at p. 733, 222 P. 2d 704, this court, speaking through the late Mr. Chief Justice

Harvey, indicated that section 17, of article 2, of our constitution did not apply to orders of the corporation commission relating to the Hugoton gas field. Moreover, this court does not think it necessary to decide whether the commission is acting under delegated quasi-legislative power or under quasi-judicial power. All this court wishes to decide is that notwithstanding the fact that the commission gave the same kind of notice before issuing a special order as given before issuing a general order or regulation, a special order which is contrary to the basic rule or regulation for the Hugoton gas field constitutes error and is contrary to law. On the other hand, we do not think that such order would be void or unconstitutional simply because of the procedure followed.

It is clear that the lower court's decision may be affirmed by this court although we do not agree with all of the reasons given for the decision, see *Securities Acceptance Corporation v. Perkins*, 182 Kan. 169, syl. ¶ 6, 318 P. 2d 1058.

From what has been said, it appears that the decision of the trial court as to the appeals herein should be affirmed. It is so ordered.

## APPENDIX

### Paragraph "g" of the Basic Order.

"g. That one well completed in the said formation can adequately and sufficiently drain 640 acres without causing waste and, considering the cost of drilling, equipping and operating one well in comparison with the estimated recovery per acre and the slow rate at which the production for said field can be ratably and non-wastefully marketed, the Commission finds that the basic acreage unit to be used in the proration formula hereinafter prescribed should be 640 acres, and that in no instance shall more than 640 acres be attributable to a well for the purpose of calculating the acreage factor except by specific order of the Commission as hereinafter provided. The acreage factor of a well shall equal the number of acres held by production from said well divided by 640. Expressed in a mathematical formula, said acreage factor may be set forth as follows:

$$\text{Acreage Factor} = \frac{\text{No. of acres attributable}}{640}$$

In the event that more than one well is located on any one lease, the acreage to be used in calculating the acreage factor of each

well on such lease shall be determined by dividing the total number of acres by the number of wells, and the quotient thereof shall be the acreage used in making said calculation. To be considered as attributable to a well, the acreage shall be contiguous or adjoining, with the well located as near as practicable in the center thereof, and in no event nearer than 1,250 feet from any boundary line of the unit; except, however, that this restriction shall not apply to leases or tracts which have already been unitized in compliance with previous orders issued by the Commission, or to wells now in existence and located on tracts containing less than 640 acres.

"Such wells, now in existence, and located on tracts containing less than 640 acres, may be attributed acreage which is held by production from such well, if such acreage is located within a two-mile radius of the well, or upon application, and after notice and hearing, the Commission may authorize the inclusion of acreage as being attributable to a well now in existence if the acreage lies within a three-mile radius of the well and if, upon hearing, it is shown to the Commission that it is impossible or impracticable to unitize the tract upon which such well is located with other acreage lying within two miles thereof: *Provided, however,* That the Commission may, either on complaint filed, or upon its own motion, after notice and hearing, exclude any acreage from inclusion in any unit which, in its judgment, is not productive and which should not be considered as proven acreage.

"The term 'held by production,' as used in this paragraph shall mean that acreage so held participates in the production upon a royalty basis and does not receive delay rentals.

"That there are located in the field certain so-called 'short' sections, according to the United States Governmental Survey, and that some of such sections contain materially less than 640 acres. Wherever possible, such sections should be unitized among themselves, or with other leases or tracts, in order to form units of approximately 640 acres: *Provided,·however,* That the short sections located along the Kansas-Oklahoma state line shall be unitized only with the tracts immediately north thereof and the units thus formed may contain more than 640 acres.

"In cases where it is impossible to create such units, the Commission may, upon proper application, authorize the unitization of such short sections containing materially less than 640 acres with other tract or tracts, and under such conditions the acreage attributable to

any well or wells located upon such unit may be greater than the 640 acres hereinbefore provided. However, no such unit shall receive an acreage factor attributing more than 640 acres without an express order of the Commission, and no presumption shall arise from this order that such authorization will be granted in any specific instance, and in no instance shall any unit so formed be granted more than 800 acres. It is further provided, that producers and owners of gas wells which were completed prior to January 30, 1940 (being the date upon which the first basic order of proration was issued herein), who also possess the right to produce natural gas from other lands and leases within the limits set forth in this provision, may attribute such lands and leases, not exceeding 640 acres, to a unit for production hereunder (whether such leases are held by delay rentals or otherwise) for a term not exceeding one year from the date hereof. Within such period of one year the owner or producer of such wells shall file with the Conservation Director satisfactory evidence that the owners of the minerals have become participants in the royalty payments as otherwise hereinafter required. Any such lands which are not within said period so unitized for purposes of sharing the royalties from the wells shall henceforth be excluded as a part of any such production unit.

"That there are located in the field certain so-called 'long' sections, according to the United States Governmental Survey, and that such 'long' sections lie along the north (correction) line of Township 26 South in Hamilton, Kearny, and Finney counties, and that such 'long' sections contain materially more than 640 acres. The Commission finds that, notwithstanding anything else in this order to the contrary, the acreage permitted to be attributable to any well drilled in accordance with rules in any one of such 'long' sections may exceed 640 acres but shall not exceed 900 acres, and that the acreage factor for any well located in a 'long' section shall be equal to the number of acres not in excess of 900 acres, attributed to such well divided by 640. Expressed in a mathematical formula, said acreage factor for such a well may be set as follows:

$$\text{Acreage Factor} = \frac{\text{No. of acres attributable}}{640}$$

"In the event that more than one well is located in any of the so-called 'long' sections, the acreage to be used in calculating the acreage factor of each well on such 'long' section shall not exceed 640 acres. To have in excess of 640 acres considered as attributable

to a well drilled on any such 'long' section, only one well shall be drilled thereon in accordance with these rules, the acreage attributable shall be contiguous or adjoining and all such acreage attributable shall be located within the boundary lines of the 'long' section on which the well is located. No acreage located without the boundary lines of such 'long' section on which only one well is located shall be considered in figuring the acreage attributable to such well. The well, when only one well is to be drilled to any one 'long' section, may be drilled, at the operator's discretion, at any point within the 'long' section not farther than 467 feet from the center thereof; in no event shall the well be located nearer than 1,250 feet from the boundary line of the 'long' section.

"Any well capable of producing natural gas, in existence at the time of the adoption of this order, located in any of the subject 'long' sections, shall be considered as the well for such 'long' section, regardless of its location within the section, and shall be entitled to have attributed thereto, when properly unitized, acreage within said section not in excess of 900 acres."

FATZER, J., concurring: I concur fully in the holding of the court that the orders of the State Corporation Commission here on appellate review are unlawful. However, I wish to state that in my opinion the legislature conferred no legislative or judicial power upon the commission when it enacted G. S. 1949, Ch. 55, Art. 7, relating to the production and conservation of natural gas. The statute confers upon the commission only administrative duties (*The State v. Railway Co.*, 76 Kan. 467, 92 Pac. 606; affirmed, *Mo. Pac. Ry. Co. v. Kansas*, 216 U. S. 262, 54 L. Ed. 472, 30 S. Ct. 330).

I fully concur in the court's opinion indicating that Art. 2, Sec. 17 of the Constitution of Kansas does not apply to orders of the commission relating to the production and conservation of natural gas, however, I wish to further state in my opinion that provision of the constitution has application only to laws enacted by the legislature. It has no application to rules, regulations, or orders promulgated by a board, commission, or agency exercising administrative duties only.