No. 41,483

GEORGE E. JACKSON and KARL B. JACKSON, *Appellants*, v. STATE CORPORATION COMMISSION and TIDEWATER OIL COMPANY, *Appellees*.

(348 P. 2d 613)

Opinion filed January 23, 1960.

*Harold G. Forbes,* of Eureka, argued the cause, and *Thomas C. Forbes* and *George Forbes,* both of Eureka, were with him on the briefs for the appellants.

*J. Robert Wilson,* general counsel, and *S. F. Fleeker,* assistant general counsel, were on the briefs, and *Clyde Milligan,* of Topeka, appeared as attorney of record for appellee state corporation commission.

*Carl C. Chase,* of Eureka, argued the cause, and *Jack D. Jones,* of Tulsa, Oklahoma, was with him on the briefs for appellee Tidewater Oil Company.

The opinion of the court was delivered by

ROBB, J.: This appeal is from the trial court's judgment, in an action for judicial review of a decision of the state corporation commission dated March 6, 1957, which judgment affirmed the order and decision of the commission.

Only a brief résumé of the facts will be given since the preliminaries were set out in sufficient detail when this case was previously before us. (*Jackson v. State Corporation Commission,* 183 Kan. 246, 326 P. 2d 280.)

The temporary cease and desist order issued by the commission by reason of plaintiffs' complaint of the commission's order of July 27, 1953, granting Tidewater the right to repressure with salt water the wells on its leases, was set aside after a full hearing before the commission on the above complaint. At the completion of this hearing, an order dated March 6, 1957, was entered, the substance of which is that on December 4, 1956, a complaint was filed alleging Tidewater's unlawful operation of its repressuring project resulting in waste prohibited by G. S. 1949, 55-601 on plaintiffs' adjoining lease; that pursuant to notice hearings were held and the matter taken under advisement; that along with rescinding the cease and desist order, the commission dismissed plaintiffs' complaint and made its memorandum opinion a part of its order.

Since the memorandum opinion is rather long we shall summarize only the pertinent contents. Plaintiffs' complaint, initiating the proceeding, alleged Tidewater's unlawful operation of its water flood project on its lease unit adjoining plaintiffs' leasehold on the Barrier property in Greenwood county, causing waste of natural resources in violation of G. S. 1949, 55-601; G. S. 1955 Supp. 55-121, and rules 82-2-102 and 82-2-121 of the commission, and plaintiffs would continue to be damaged thereby. Plaintiffs asked for an immediate order to cease and desist and a permanent modification of Tidewater's repressuring authority. Tidewater's repressuring authority on input wells bordering plaintiffs' lease was suspended pending public hearing which was held in Topeka on December 18, 1956, and continued on December 27, 1956. The factual situation giving rise to the questions involved is that primary development was begun by Tidewater in 1917 and in 1948 the average production rate of its eighty-nine wells in the field was 1.7 barrels per day. The initial water flood project in 1946 was some distance northeast of plaintiffs' lease. Secondary recovery operations began in early 1949 and have since been continued by Tidewater as well as others. Six of the other major operators were named. On April 3, 1952, plaintiffs obtained the Barrier lease for three years but it provided for termination if no well were commenced on or before June 1, 1952. On May 31, 1952, plaintiffs commenced the drilling of a well by setting eighty-three feet of surface pipe in a hundred foot hole, forty-eight feet from the east boundary and sixty-one feet from the south boundary of the lease. They removed the derrick and did nothing more until

April, 1954, when they released the lease above referred to and obtained another on the same and additional land. With the progress of water flood repressuring Tidewater on July 14, 1953, filed its application under G. S. 1949, 55-133 and commission rules 82-2-500 to 82-2-505, requesting authority to repressure and water flood the Bartlesville sand formation on its leases in eleven sections in Greenwood and Butler counties. No objections were filed thereto and in due time the application was approved, and the commission on July 27, 1953, granted the authority applied for. Tidewater had furnished a plat showing wells and leases within a one half mile radius and stated that copies of the application had been mailed to all operators, but plaintiffs' names did not appear on the plat or list as offset operators.

Tidewater developed its repressuring project at the rate of 100 acres per year until in early 1956 it had advanced to land adjoining plaintiffs on the east.

In April, 1954, plaintiffs started development, adjoining Tidewater, and between April 13, 1954, and October, 1956, drilled nine producing wells, six along their south boundary and three along the east boundary, the first being the well in the corner of their lease which had surface pipe set on May 31, 1952. All nine wells were heavily fractured and had produced a total of 100,000 barrels of oil. On May 15, 1956, Tidewater notified plaintiffs of its proposed adjacent water flooding, suggested co-operation and sharing of cost proportionate to acreage owned, but plaintiffs neither approved nor joined in the proposed co-operative agreement for the secondary recovery project.

In July, 1956, Tidewater drilled three input wells in a line north and south and about twelve feet east of plaintiffs' east boundary and flooded two of plaintiffs' wells but upon issuance of the commission's temporary cease and desist order, Tidewater's input wells along plaintiffs' south and east boundaries were shut down.

The two questions before the commission were (1) whether Tidewater's water flood operations were lawful, and (2) had Tidewater, in connection with its application for repressuring authority, sufficiently complied with the notice requirement of subsection E of rule 82-2-502 of the commission providing that notice of the application shall be given to each operator of drilling or producing wells within a one half mile radius of the lease involved in the repressuring project, with subsection F providing that objections or complaints must be filed, and with subsection

G providing that in the event any such objection or complaint is filed, a hearing shall be had after reasonable notice of the time, place and subject matter of such hearing has been given to the parties in interest.

The memorandum opinion continued that there was no requirement in the commission's rules for notice to adjoining lessees or landowners but only notice to operators of drilling or producing wells as above stated in subsection E. To require notice to plaintiffs would require an applicant to make physical inspection of all adjoining leases to locate possible well locations, which would be untenable. The purpose of the notice requirement is to permit filing of objections so a public hearing can be had and the commission can decide whether the application should be granted. The filing of objections does not defeat nor assure denial of such application; it merely provides the objector with an opportunity to be heard prior to the commission granting or denying the application.

Then followed a discussion in regard to plaintiffs' complaints that Tidewater allowed the water to escape and flood plaintiffs' wells which would replace oil in the Bartlesville formation, create waste and irreparably harm plaintiffs.

The commission stated that Tidewater's operations were pursuant to G. S. 1949, 55-133,4 and commission rules 82-2-500 et seq. There was no claim or evidence of Tidewater exceeding its authority by its normal pattern of line injection wells used to confine the oil in the lease for production from a central well. One injection well eventually floods every producing well in the reservoir and the legislature was aware of this effect of repressuring when the authorizing statute was passed. G. S. 1949, 55-601, G. S. 1957 Supp. 55-121, and commission rules 82-2-102, 82-2-103, and 82-2-121, relating to confinement of salt water encountered during drilling operations are inapplicable to repressuring activities. G. S. 1949, 55-133 and 55-134 and commission rules are still in full force and effect and provide—not for waste of natural resources—but for recovery and conservation of oil and gas which would otherwise be lost. Between 1949 and 1956 Tidewater had by its project produced 2,327,785 barrels of oil from approximately 900 acres of land and if normally continued, would show comparable production figures as to the leases here involved. Producing wells may be flooded out in repressuring activities but the oil is not lost; it is only pushed forward by the injected water and is still

confined, awaiting capture. The commission's rule 82-2-101 as to correlative rights provides that no one producer can be enriched to the detriment of other producers in a common source of supply by taking an undue proportion of the oil or gas obtainable therefrom, or by causing undue drainage between developed leases. The only way to prevent movement of oil from one lease to another and protect correlative rights is to place input wells along the boundary between.

The commission concluded that no waste of natural resources or injury to correlative rights were shown, it dismissed plaintiffs' complaint, and rescinded the temporary cease and desist order. Plaintiffs filed an application for rehearing which was denied by an order of the commission wherein the foregoing memorandum opinion was again referred to and adhered to.

Plaintiffs filed a petition for judicial review of the commission's ruling alleging facts as substantially set out in the commission's memorandum, challenging the correctness thereof, and further alleging that no application had ever been made to repressure within one half mile of plaintiffs' lease and the original order of July 27, 1953, did not grant Tidewater such authority. Therefore, the relief sought in their complaint of December 4, 1956, should be allowed and the 1953 order construed to prevent such repressuring in the Bartlesville formation within a half mile of plaintiffs' lease. Tidewater, upon motion, was allowed to intervene. It filed a short answer referring to evidence introduced before the commission, which was in support of the commission's findings of fact; that these findings in turn supported the commission's order; and the only matter before the trial court was whether there was any evidence to support those findings and decision.

The trial court's memorandum decision showed the matter was presented before the two judges of that judicial district, sitting *en banc*, who considered abstracts of the evidence, the exhibits, and arguments of counsel, and agreed with all the commission's findings and its decision—particularly as to notice. However, the court included a suggestion that more adequate notice could be sent to "landowners in the vicinity and . . . any other person who might be affected by the order." The trial court further stated that plaintiffs had now had their day in court and their correlative rights had been determined. In the formal journal entry of judgment the trial court affirmed the findings and decision of the commission.

The record here includes testimony of four witnesses for plaintiffs, three witnesses for Tidewater, and a number of exhibits. The hearing before the commission consumed at least parts of two days before its findings were made and before any dismissal was made of plaintiffs' complaint or the previous order temporarily directing Tidewater to cease and desist its repressuring process.

Plaintiffs contend that inadequate notice made the original order in 1953 of no force and effect as to them, the Barriers, or the land involved in their leases, and cite *Day v. State Corporation Commission,* 185 Kan. 165, 341 P. 2d 1028, opinion denying rehearing, 185 Kan. 382, 345 P. 2d 651; *Matzen v. State Corporation Commission,* 185 Kan. 206, 341 P. 2d 1031, opinion denying rehearing, 185 Kan. 404, 345 P. 2d 630, but those cases are not analogous to our present case and in addition plaintiffs ignore *Stevens v. State Corporation Commission,* 185 Kan. 190, 341 P. 2d 1021, which, in requiring an amendment of a basic order before granting exceptions thereto, was an important element in the Day and Matzen cases.

Were plaintiffs successful in their contention the only practical result would be that another hearing before the commission would be in order, to be followed by the same procedure until the matter was again presented to this court. This could go on *ad infinitum* but courts are committed to the eventual conclusion of litigation and when a litigant has had his day in court, and a correct determination has been made, that ends the matter. No authorities need be cited to support this elementary principle. In other words, the question of notice presented by plaintiffs in this particular sequence of facts and circumstances has become moot.

There yet remains the proposition as to whether there was any evidence to support the commission's findings of fact that were affirmed and adopted by the trial court. There was sharp controversy in the evidence which is apparent when we compare the testimony of George E. Jackson, one of the plaintiffs, with that of R. C. Earlougher, a consulting engineer from Tulsa. Jackson testified that Tidewater's engineer admitted to plaintiffs and the court that when it drilled the wells Tidewater knew the salt water would destroy plaintiffs' producing wells. Earlougher testified that Tidewater's input into four of its wells would ultimately cause migration of oil to plaintiffs' lease, but it had not done so to date. William H. McPhail's testimony was that it would be approximately four years before the benefit would inure to plaintiffs' lease. This is symbolic of most of the other testimony ab-

stracted, all of which the commission weighed and therefrom made its findings, which were affirmed by the trial court. Numerous comparable situations have confronted this court, the latest of which were *Davis-Wellcome Mortgage Co. v. Long-Bell Lumber Co.*, 184 Kan. 202, 336 P. 2d 463, and *Davis-Wellcome Mortgage Co. v. Long-Bell Lumber Co.*, 184 Kan. 209, 336 P. 2d 469. The result that was reached in those cases to the effect that a trial court's findings based on conflicting evidence are conclusive on appeal in fully applicable here.

We conclude the trial court was correct in affirming that findings of the commission, which findings were based on substantial competent evidence, and was likewise correct in affirming the decision based on those findings.

Affirmed.