No. 42,506

SAFEWAY STORES, INC., *Appellee*, v. DONALD L. WILSON, d/b/a Wilson Truck Lines, Riverdale, Kansas, and d/b/a Wilson Sugar and Oil Company, Riverdale, Kansas, and AMERICAN FIDELITY & CASUALTY COMPANY, INC., *Appellants*.

(372 P. 2d 551)

Opinion filed June 9, 1962.

*Robert H. Nelson*, of Wichita, argued the cause, and *H. W. Fanning* and *Richard C. Hite*, both of Wichita, were with him on the briefs for the appellants.

*John C. Thurlo*, of Kansas City, Missouri, argued the cause, and *Kenneth G. Speir*, of Newton, was with him on the briefs for the appellee.

The opinion of the court was delivered by

PARKER, C. J.: This was an action to recover damages resulting from a motor vehicle collision. The plaintiff recovered and the defendants appeal.

The controlling question on appellate review is whether the appellants were estopped from asserting the statute of limitations (G. S. 1949, 60-306, *Third*) as a defense. For that reason the pleadings are not involved and require no attention. However, a detailed statement of the facts, which were stipulated, will be necessary.

The appellant, Donald L. Wilson, is a truck operator holding a private carrier permit and a contract carrier permit issued by the State Corporation Commission. On all dates in question Wilson was insured, as required by G. S. 1961 Supp. 66-1,128, under an

insurance policy issued by the appellant, American Fidelity & Casualty Company, Inc.

On July 30, 1957, one of Wilson's trucks which was being driven by his employee (Merlin O. Potter) on U. S. Highway No. 50, collided with a truck owned by the appellee, Safeway Stores, Inc., resulting in damage to Safeway's truck and injury to the driver, Albert Blackburn. The injury to Blackburn, and the personal injury action resulting therefrom, is only incidentally involved in this action.

The collision occurred as a direct and proximate result of negligence on the part of the driver of Wilson's truck. As a result of the collision, Safeway sustained damage to its truck in the sum of $5,174.16, which was admitted by appellants. Safeway claimed additional damages in the amount of $696.92, largely for the loss of use of the truck, which was denied by the appellants.

Numerous letters were exchanged between the representative of Safeway and the representative of the insurance company. It is upon these letters that Safeway relies for its claim of estoppel on the part of appellants to assert the statute of limitations. The representatives were duly authorized agents of the respective parties. We will treat the correspondence as passing directly between Safeway and the insurance company.

On November 29, 1957, Safeway mailed to Wilson an itemized statement of the truck damage and requested payment. On December 20, 1957, the insurance company responded as follows:

"Your letter of November 29, addressed to Wilson Truck Lines, of Riverdale, Kansas, along with enclosures, has been forwarded to this office for acknowledgment and further handling.

"As you are aware, your employee-driver involved, Albert J. Blackburn, is making claim for personal injuries allegedly sustained as a result of this accident, and it will be impossible for us to take any action on your claim for property damage until we have been able to dispose of Mr. Blackburn's claim for personal injury.

  .    .    .    .    .    .    .    .    .    .    .    .

"It is suggested you diary your file on this matter 45 days and contact us again at the end of that time."

On February 21, 1958, Safeway mailed a letter to the insurance company asking for advice as to when the claim would be settled. A response was made to this letter, March 5, 1958, stating in part as follows:

"Your letter of February 21st is at hand.

"It is a normal practice in matters of this kind to delay the disposition of

any purely property damage claims until such time as pending claims for personal injuries have been disposed of. This is a proposed plan of handling in this file as we have explained to Mr. Russell Shirk.

. . . . . . . . . . . . . .

"We trust that the foregoing explains our proposed method of handling and assure that at such time that we are able to dispose of Mr. Blackburn's personal injury claim with his attorney we will be happy to give to your company's claim for property damage our further consideration."

On May 6, 1958, Safeway again wrote to the insurance company inquiring as to the status of the claim. A response was received on May 21, 1958, stating:

"We have your letter of May 6 inquiring as to the present status of your claim against Wilson Truck Lines.

"We agree with you that sufficient time for disposition of the personal injury claim has probably elapsed, but unfortunately we have as yet been unable to get this matter disposed of.

"It is suggested that you continue to diary your file for an additional 90 days."

On August 20, 1958, Safeway wrote to the insurance company requesting current information on the claim. The insurance company responded August 21, 1958, again stating:

"Please be advised that the personal injury lawsuit filed by your employee, Albert J. Blackburn, is presently pending in the U. S. District Court, for the District of Kansas, and as heretofore indicated to you, we can take no action on your company's claim for property damage until the personal injury claim has been disposed of."

On April 3, 1959, Safeway mailed another itemized statement to the insurance company and suggested that the claim should now be processed without difficulty. This letter was not answered.

On May 15, 1959, Safeway mailed a letter to the insurance company stating that the personal injury claim had been settled seven weeks ago and requesting information as to why the Safeway claim had not been settled. The insurance company responded on June 9, 1959, as follows:

"Please accept our apologies for not having sent a reply to your letter of inquiry of May 15th. We wanted to have sufficient time to thoroughly review this file before replying.

"Enclosed herewith you will find releases reciting as consideration the sum of $5,174.16, the actual cost of repairs to your equipment involved. It is suggested that you have both copies of the release executed by an authorized agent of your company, have your agent's signature witnessed, date the releases and return them to us and we will issue draft to cover."

On June 22, 1959, the attorney for Safeway mailed a letter to the

insurance company informing it that it had left out of the suggested release four items of damages, chiefly loss of use of the truck. A response was mailed by the insurance company on June 24, 1959, stating that if some proof of the loss of use item was furnished the claim would be considered further. The attorney for Safeway mailed a letter to the insurance company on July 1, 1959, suggesting that further documentary proof of the loss of use would be furnished, also suggesting that the insurance company might wish to reconsider the matter in the light of the information already submitted.

On September 14, 1959, the attorney for Safeway mailed a letter to the insurance company giving information on rental values in support of the claim for loss of use and stating further:

"As this matter has dragged on and on for many months, during which it may not improperly be said that we have lost the interest on money unquestionably due us, I trust that you will give your immediate attention to this matter and forward to me Markel's check in the sum of $5,871.08. This sum represents $5,174.16 which you have already acknowledged as due to Safeway, plus the following:

"Loss of Use of Equipment......................... $500.00
"32 Driver hours at $2.35............................ 75.00
"Layover and meal expenses........................ 12.00
"422 miles at 26¢ per mile.......................... 109.72"

A prompt reply, dated September 16, 1959, was mailed in response to the above letter, stating:

"Thank you very much for your letter of September 14th, setting out information relative to the loss of use item incorporated in your company's claim for property damage.

"A review of our files and of the applicable law indicates that this accident occurred in the State of Kansas, which state has a 2-year Statute of Limitations. In view of the fact that more than two years have elapsed since the date of this accident, we feel we can give your company's claim no further consideration."

This action was filed in the district court of Harvey County on February 8, 1960.

When the case came on for trial the court instructed the jury to return a verdict for appellee in the amount of $5,174.16 on the facts as stipulated and submitted to the jury only the question of damages on the disputed claim of $696.92. The jury returned a verdict in the amount of $5,871.08.

It should be here noted that in the hearings before the Court below appellants raised the question of the statute of limitations at every appropriate stage of the proceedings.

There is some confusion in the record as to the reason given by

the district court for its refusal to apply the statute of limitations. The court did indicate that under the facts as stipulated the statute of limitations did not begin to run until the judgment was rendered in the Blackburn (Federal Court) case on November 3, 1958. However, it also indicated that the appellants were estopped by their conduct from raising the question of the statute of limitations.

We will not concern ourselves with the reason announced by the trial court for its decision, but will examine the record for the purpose of determining whether the judgment was correct. (See, *e. g.*, *Stevens v. State Corporation Commission,* 185 Kan. 190 [Syl. ¶ 3], 341 P. 2d 1021; *Custom Built Homes Co. v. State Comm. of Rev. and Taxation,* 184 Kan. 31, [Syl. ¶ 6], 334 P. 2d 808.)

As previously indicated, the all important, in fact the only, question raised by the record presented in this case is whether equitable estoppel precludes the appellants from asserting the statute of limitations as a bar to the action.

Appellants contend that the court erred in not submitting the question of estoppel to assert the statute of limitations to the jury.

The facts were stipulated as to this issue. The appellants introduced no additional evidence. There was no issue of fact to present to the jury. Whether the facts as stipulated constituted estoppel to assert the statute of limitations was a question of law.

This court, in a long line of decisions, has held that where facts are not disputed there remains only a question of law, and a directed verdict is proper. See *Schmid v. Eslick,* 181 Kan. 997, 317 P. 2d 459, where it is said:

". . . Where no evidence is presented, or the evidence presented is undisputed and is such that reasonable men could not accept it as sufficient to establish the existence of a fact, it becomes the duty of the court to remove the issue from the jury. In that event, the matter becomes a question of law for the court's determination. (*Kemp v. Railway Co.,* 91 Kan. 477, 138 Pac. 621; *Ismert-Hincke Milling Co. v. Ismert Estate,* 136 Kan. 617, 16 P. 2d 521; *Cates v. City of Independence,* 139 Kan. 805, 33 P. 2d 161.) In *Kemp v. Railway Co.* supra, it was said:

"'Courts should be careful not to encroach upon the province of jurors when the facts, although undisputed are such that the minds of candid persons may draw differing inferences and arrive at opposing conclusions. This wholesome rule, however, should not be stretched so far as to relieve the courts from the solemn duty of deciding the issue in cases like this where such divergence can not be found consistently with reason and justice. In such a situation the question is one of law only.' (l. c. 483.)" (pp. 1004 and 1005.)

See, also, *Phillips Petroleum Co. v. Skinner,* 140 Kan. 413, 36 P. 2d 968, where it was said:

"Appellant contends the court erred in directing a verdict. We are unable to see in the record any controlling fact which was controverted in the evidence. If we are correct in this, it was proper for the court to direct the verdict. See 26 C. J. 866, and cases there cited . . ." (p. 415)

And for other supporting decisions see *Jordan v. Kancel,* 188 Kan. 292, 295, 361 P. 2d 894; *Western Fire Ins. Co. v. Phelan,* 179 Kan. 327, 332, 295 P. 2d 675; *French v. French,* 161 Kan. 327, 167 P. 2d 305; *Wilson v. Gonder,* 121 Kan. 469, 247 Pac. 631.

Appellants further contend "that the plaintiff failed to offer any evidence which in any manner would constitute or be sufficient to set up an estoppel on the part of the defendants to assert the statute of limitations."

We have presented the undisputed facts at considerable length and in unusual detail, hence they need not be repeated.

There is no definite rule governing estoppel which can be applied to every situation. There are few, if any, relationships, of which the law takes cognizance, which are not effected to some degree by the principles of estoppel. Since the principle of equitable estoppel runs through all transactions it cannot be determined by any fixed or definite rule. Where the question is raised each case must be determined on its own individual facts.

The appellants rely chiefly on the case of *Pelischek v. Voshell,* 181 Kan. 712, 313 P. 2d 1105, in which this court stated that there must have been a false representation or concealment of material facts to create estoppel. In that case the court was considering estoppel from claiming breach of a contract. The court specifically states that such rule was applicable to the facts of record in that case.

In *Rex v. Warner,* 183 Kan. 763, 332 P. 2d 572, the court states a rule which will serve as a guide to the facts of record in this case. In the opinion it is said:

". . . It is a legal maxim well understood that nothing can interrupt the running of the statute of limitations, and it is commonly stated without any qualification. Courts, however, have ingrafted upon such statutes an exception based upon estoppel. Generally speaking, actual fraud in the technical sense, bad faith, or an attempt to mislead or deceive is not essential to create such an estoppel; to invoke the doctrine, the debtor or defendant must have done something that amounted to an affirmative inducement to plaintiff to delay bringing the action. (*Railway Co. v. Pratt,* supra; *Pessemier v. Zeller,* supra;

*Cole v. City of Kanopolis,* supra; 53 C. J. S., Limitations of Actions, § 25, p. 966; 34 Am. Jur., Limitation of Actions, § 412, p. 324.)" (p. 771.)

See, also, *Cole v. City of Kanopolis,* 159 Kan. 304, 153 P. 2d 920, and *Railway Co. v. Pratt,* 73 Kan. 210, 216 to 218, incl., 85 Pac. 141, and decisions cited at page 219.

The rule announced in the foregoing decisions appears to be in harmony with the weight of authority.

In *Bergeron v. Mansour,* 152 F. 2d 27, the court stated:

". . . There can be no doubt that the adjuster held out to the plaintiff the idea and hope of a settlement of her claim . . . if she did not consult counsel. The plaintiff reasonably relied upon the representations and conduct of the defendant and allowed the statute to run before commencing her action . . . We think it is unconscionable to permit him to lull her into a false sense of security and cause her to let the one year limitation pass and then allow him to take advantage of the result of his conduct as a defense to her action . . ." (p. 30.)

In *Benner v. Industrial Acc. Com.,* 26 Cal. 2d 346, 159 P. 2d 24, where it was held that the insurer and employer were estopped to assert the statute of limitations, the court said:

". . . the employer and its insurance carrier cannot escape the consequences of their acts or conduct affirmatively engaged in to procure delay for purposes of settlement, or investigation or otherwise, upon which the employee has relied and by which he has been induced to delay the filing of a claim until after the expiration of the statutory period. Such conduct, so relied upon, becomes the basis of an estoppel against the party responsible for the delay and should, under the facts here presented, preclude the bar of the statute of limitations." (p. 350.)

In *Howard v. West Jersey, &c., R. R. Co.,* 102 N. J. Eq. 517, 141 Atl. 755, affirmed 104 N. J. Eq. 201, 144 Atl. 919, the court stated:

"While it cannot be said to be ordinarily any part of duty to apprise an adversary of his rights, it must be recognized that one cannot justly or equitably lull his adversary into a false sense of security and thereby cause his adversary to subject his claim to the bar of the statute and then be permitted to plead the very delay caused by his course of conduct as a defense to the action when brought . . ." (p. 523.)

For other decisions of like import see, also, *Rupley v. Huntsman,* 159 Cal. App. 2d 307, 324 P. 2d 19; *Clover Splint Coal Co. v. Lorenz,* 270 Ky. 676, 110 S. W. 2d 457; *Baker-Matthews Mfg. Co. v. Grayling Lbr. Co.,* 134 Ark. 351, 203 S. W. 1021; *McLearn v. Hill,* 276 Mass. 519, 177 N. E. 617.

We will not review again the facts which have been presented. It suffices to say, that in the face of those facts, the record presented

and the decisions to which we have heretofore referred, this court is of the opinion appellants' continued requests for delay until the personal injury suit was determined, the offer to pay the actual cost of repairs to the truck, and the request for further information as to damages for loss of use of that vehicle, were sufficient to lull appellee into a sense of security preventing it from filing the instant action before the running of the statute of limitations.

Therefore based on what has been stated and held the judgment must be and is affirmed.

PRICE and FATZER, JJ., dissenting.