THE MISSOURI, KANSAS & TEXAS RAILWAY COMPANY
v. C. H. PRATT.

No. 14,349.   (85 Pac. 141.)

SYLLABUS BY THE COURT.

DAMAGES—*Breach of Warranty—Grantor Estopped from Pleading the Statute of Limitations.* In an action for damages for the breach of a covenant of warranty in a conveyance of real estate it appeared that at the time of the delivery of the deed and the payment of the consideration by the grantee a third person was in actual possession of the real estate, claiming to hold under a title paramount to that of the grantor in such deed. Such occupancy and claim were well known to the parties to the conveyance, and they knew that the occupant intended to hold possession until ousted by judicial process. Litigation was then pending and suits were contemplated by the grantor which would finally determine the ownership of such real estate. In the litigation which ensued the occupant was successful in the lower courts, but the grantor carried the cause to the supreme and federal courts. The grantee, concluding that the grantor would eventually lose, insisted upon repayment of his money. The grantor, however, by assurance that his title would ultimately be established, and, if not, that the money would be refunded, requested and induced the grantee to wait until the end of the litigation, which he did, relying upon the representations of the grantor. The matter was not ended until long after the

time provided by the statute of limitations within which an action upon the covenant of warranty might have been brought had expired. Soon after the final determination of the litigation, which was adverse to the grantor, the grantee brought an action upon the covenant of warranty in the conveyance. The grantor pleaded the statute of limitations. *Held,* that the grantor is estopped from maintaining such defense.

Error from Allen district court; OSCAR FOUST, judge. Opinion filed March 10, 1906. Affirmed.

*John Madden,* and *W. W. Brown,* for plaintiff in error.

*Cates & Cates,* for defendant in error.

The opinion of the court was delivered by

GRAVES, J.: The only question involved in this case is the statute of limitations as applied to a covenant of warranty in a conveyance of real estate. The facts briefly stated are these:

In 1889 the plaintiff in error conveyed the land in controversy to the defendant in error by an ordinary deed of general warranty, in consideration of $954.20 cash paid at that date. At the time of such conveyance the grantor held a patent to the land from the United States. The land was occupied by one N. L. Ard, who claimed it as a settler under the homestead and preemption laws of the United States. He settled thereon in 1866, long before the plaintiff in error received its patent thereto. On July 26, 1866, the United States, by an act of congress, granted the alternate sections of a ten-mile strip of land to the plaintiff in error, then known as the Union Pacific Railway Company, Southern Branch, upon conditions named in the grant. To indemnify the company from loss on account of lands to which homestead and preemption rights might attach before these conditions were complied with, the act provided that the company might select in lieu thereof an equal amount of land from

lands adjacent to the ten-mile strip belonging to the United States. There was a large number of settlers upon these lands claiming under the homestead and preemption laws, and a sharp controversy arose between them and the railroad company as to their respective rights thereto.

The land in controversy in this action was outside the ten-mile strip. On November 3, 1873, the company selected it as an indemnity for lands lost as before stated. The controversy between the settlers and the company involved many homes and large and valuable tracts of land. It aroused great excitement, and many lawsuits were commenced relating thereto, both in the federal and local courts. The claims of the respective parties were subjects of public discussion, and were matters of general notoriety and common knowledge. This controversy continued without interruption from the date the land was selected by the company to December 19, 1900, a period of sixteen years prior to the execution of the conveyance to the defendant in error. To settle this dispute Pratt, the defendant in error, brought an action of ejectment against Ard in 1889 to recover a part of this land. The case was carried to the supreme court of the United States, where it was decided in favor of Ard on March 4, 1895. (*Ard v. Brandon*, 156 U. S. 537.) In 1894 the defendant in error commenced an action of ejectment against Ard to recover another part of the land involved in this action. This case was taken to the supreme court of this state, and decided against Pratt on June 8, 1901. (*Pratt v. Ard*, 63 Kan. 182, 65 Pac. 255.) On December 19, 1900, in a case brought by the United States in the circuit court for Kansas against all parties interested in the ten-mile strip and indemnity lands, the patent to the plaintiff in error for the lands involved in this action and the conveyance to the defendant in error thereof were canceled, and soon afterward the land was patented to Ard. The defendant in error was never in possession of this land, and never re-

ceived any profits therefrom because of the adverse possession of Ard. During the progress of the litigation, and after the conveyance to the defendant in error, considerable correspondence occurred between the attorneys for the company, who were fully authorized to bind the company thereby, and Pratt and his attorneys, among which were the following letters from T. N. Sedgwick, general attorney for plaintiff in error:

"PARSONS, KAN., November 18, 1895.

"I have your favor of the 16th, stating that the case of yourself against Ard for possession of the east half of the southeast quarter of 2-26-20 was decided against you by the court and in favor of Ard, and I note what you say about not taking the case further unless the company requires it.

"You will readily understand that you are hardly in a position to compel the company to assume all responsibility in this case at this late day. This suit has been pending since January 5, 1895, the date of the filing of your petition, and yet no notice whatever was given the company of the pendency thereof until the last ten days, and then we were right in the midst of a half a dozen courts, where we had more business than we could attend to. Of course, if you had given us notice earlier we could have assumed the responsibility which you now ask us to assume, but it was utterly impossible for me to be present at the trial of this case. I can only say we desire the case carried clear through all the courts.

"From your statement of the case to me Mr. Ard has not a ghost of a show, in my opinion. I have great confidence in the ability and integrity of Mr. Cates and Mr. Foust, and have no doubt they made the best case possible for you to make.

"I hope you have taken time to take the case to the supreme court, and as soon as I can get time I will investigate the matter, and if you do not desire to carry the matter further I will do it myself in your name.

"You spoke of the other cases. Of course, I know nothing of the other cases that you have lost, except the other piece of land owned by Mr. Ard. If you have any claim against the company which you have not presented, and which you desire to make, you will

have to make it and present it in due form, so that it can be properly investigated.

"Please write me how much time you have to make a case for the supreme court in the case of yourself against Ard, and whether or not you have the record in shape and tried it with a view of going to the supreme court. Of course, we do not give up on single trial."

"PARSONS, KAN., February 18, 1898.

"I have, before me your favor of the 12th instant, and also yours of January 30, regarding the case of yourself against N. L. Ard, which you designate as the statute-of-limitations case.

"This case was taken to the court of appeals at Fort Scott, the record being filed there October 28, 1896, as shown by the clerk's letter to me. A waiver of summons was filed in the case on November 10, 1896. Its number on the clerk's docket is 422.

"With reference to your claim for refund of money, I can tell you nothing more than what I have already told you. At Mr. Rouse's request, I sent him a statement of such lands as I supposed we would eventually be called upon to refund the purchase-money, and yours was included in the list. Since that time patents have been issued to some of the land, and certain decisions have been rendered which looks as though our title to all this land would be good. I apprehend our company is waiting to see what the decision of the circuit court will be with reference to these lands. If your title is made good, there is nothing then due you from the company; if, on the other hand, your title is not made good, we certainly will have to refund you the money, I suppose. But you ought to wait patiently; as the others are doing, until this litigation is determined. I know how you feel about it, and you do not owe me any apology for anything you have said."

"PARSONS, KAN., March 28, 1900.

"I have before me your favor of the 27th, and I note you say that you sent me a copy of a letter from the commissioner to the register of the Topeka land-office sent you by Mr. Pratt, and asking me to return the same. Beg to advise that the papers you sent were sent to our attorneys, Britton & Gray, and were returned to you with the answer of Britton & Gray on March 3. I at the same time enclosed you a copy of the

Railway Co. v. Pratt.

protest which the railway company filed in the local land-office.   You will find these papers all together.

"With reference to the appeal from the local land-office:   It does not seem to me that it is necessary to take any notice whatever of the decision of the local land-office.   The patent for the land has already been issued, and the local office, and in fact the entire land department, is already without jurisdiction, and cannot obtain jurisdiction of this land until the court, by some proceeding instituted for that purpose, sets aside the present patent.   If I obtain judgment against Ard in the case of U. S. v. M. K. & T., I will have him ejected from the land.   On the other hand, the only way that Ard can obtain a title to the land is by going into court and instituting a proceeding to set aside the present patent, and if he is successful then he can make his proof before the local land-office.   But nothing that is done in the local land-office or by the land department would have any effect whatever upon the present litigation regarding the title to this land.   Therefore I see no occasion for worry, trouble or expense over what may be taking place in the local land-office."

"PARSONS, KAN., April 7, 1900.
"I have before me your favor of the 6th instant, regarding the contest case pending in the local land-office between Ard on one side and yourself and the company on the other.   I have advised that we pay no attention whatever to this case, because the supreme court of the United States has decided that when a patent has once issued to a piece of land the land department of the United States has lost jurisdiction, and cannot again entertain an application to enter the land, and any patent subsequently issued is absolutely void. Judge Stillwell has so held in a case in Woodson county.

"The land department seems to be misled entirely by the decision of the case of yourself against Ard, wherein the supreme court held that Ard should have been permitted to enter the land, but in that decision the court did not set aside the patent, and no application to enter the same could be entertained until it is set aside."

"PARSONS, KAN., June 28, 1901.
"I have before me your favor of the 27th instant asking what the company proposes to do with reference to the piece of land in section 2 involved in the late case of Pratt against Ard, wherein the court decided that

the statute of limitations had run in favor of Ard, and also the other piece in section 2, wherein Judge Hook set the patent to the railway company aside and adjudged the land to belong to Ard under the homestead claim thereto.

"Beg to advise that neither of these cases are yet finally determined. Whenever they are, then we will determine what course we will pursue with reference to your claim for a refund of the money. In the meantime you might send me a statement of the amount you claim should be refunded to you, so that I may look it over and consider the matter."

This action was commenced some time in 1902, or we so infer, as the amended petition was filed January 21, 1903. The amended petition refers to the deed as a whole, but the particular covenant sued on reads:

. "And the said Missouri, Kansas & Texas Railway Company hereby covenants with the said party of the second part, his heirs and assigns, that it will, and its successors shall, warrant and defend the same to the said party of the second part, his heirs and assigns, against the lawful claims of all persons."

All informality in the pleadings is waived by stipulation. The action was tried in the district court of Allen county, and on January 8, 1904, the defendant in error recovered judgment for $1760.36. The plaintiff in error brings the case here, complaining that the trial court erred in not deciding that the plaintiff's cause of action was barred by the statute of limitations, and also because the court gave judgment for attorneys' fees and taxes. The plaintiff pleads waiver and estoppel as to the statute of limitations.

It is conceded that no cause of action arises upon a covenant of warranty until after eviction, either actual or constructive. It is here claimed that the actual possession of Ard at the date of the conveyance to Pratt, under a claim of right which was subsequently decided to be the better and paramount title, constituted a constructive eviction, and a cause of action arose at once which would become barred in five years in this case, or on June 6, 1894. It is

sought to bring this case within the rule stated by Mr. Justice Allen in the case of *Claflin v. Case*, 53 Kan. 562, 36 Pac. 1063, which reads:

"The weight of authority seems to be to the effect that, where the land conveyed is actually occupied by another, under an adverse and better title, the covenant is broken without any other act by either party, and an action may be at once maintained upon it." (Page 562.)

In a certain sense this case probably falls within the above rule, but under the facts here shown we do not think the plaintiff in error ought to be permitted to make this defense. To do so is an act in bad faith, and operates as a fraud upon the defendant in error. When the conveyance was made and the company received the money of Pratt it was known by both parties that the land was occupied by Ard, who would maintain possession until ousted by judicial process. It was thoroughly understood that whether Pratt would receive anything by his deed or not could only be known at the end of litigation then contemplated or already in progress. The conveyance to him was evidently made with the intention on the part of both parties to wait and abide the judicial determination of title to the land. It would be trifling with the rights of these parties to assume that they contemplated an immediate repayment of the money paid by Pratt or that an action for its recovery could or would be commenced at once. The relation of the parties to the land remained unchanged after the delivery of the deed and the payment of the consideration money by Pratt until the decision of the United States circuit court, on December 19, 1900. Up to that time Pratt waited patiently, at the request of the plaintiff in error, while it was testing its title to the land in long and repeated lawsuits. He was assured from time to time that his title would be ultimately sustained, that Ard did not have "a ghost of a show," and was requested to "wait patiently, as the others are doing, until this litigation is determined."

The plaintiff in error assumed control of the case commenced by Pratt, and carried it to the highest court, apparently confident of success. Pratt was at times urgent and insistent, but was pacified by the assurance that "our company is waiting to see what the decision of the circuit court will be with reference to these lands; if we win, we owe you nothing; if not, you will get your money." It is not suggested that Pratt failed in any respect to do his full duty in the premises. He carried out the original understanding and subsequent requests by waiting for the company to establish its title to the land. In this there was no cessation of effort. The company was diligent and persistent. The facts that it was originally understood by each of the parties that the whole matter as to the conveyance and Pratt's ultimate right to the land should be held in abeyance until the end of the litigation concerning the same, and that Pratt was induced to wait longer than he otherwise would have done by the urgent requests of the plaintiff in error, are as unmistakably established as they would be if fully and formally reduced to writing. After Pratt has so waited, and the company after full opportunity to test its claim has failed, it would be unconscionable for it to assert the very delay which it requested for the purpose of avoiding payment to Pratt of the money paid by him, for which he has received nothing. The ordinary rules of justice and fair dealing rebel at the suggestion. The facts furnish abundant reason for the application of the rule of estoppel to such conduct. We think this is a case where this rule should be applied.

Cases may be found which are apparently opposed to this view; in fact, considerable conflict exists among the decisions concerning the general subject of changing the statute of limitations by agreement, waiver, or estoppel. Much of this confusion arises from the difference in statutes, and in the application thereof to particular cases. Very few of the cases, when closely examined, will be found to differ materi-

ally in principle from the view we have here taken; it would be useless, therefore, to attempt a review of them. In the case of *Mo. Pac. R'y Co. v. Com. Co.*, 71 Mo. App. 299, there were unsettled accounts between the parties, and negotiations for adjustment were pending a long time. After failure to settle, action was brought on one of them, in which the statute of limitation was pleaded. The court said, as to this plea:

"If there was any understanding between plaintiff and defendant, or assurance given by the plaintiff to defendant that the latter would accept the former's account in payment or discharge of that of the latter, when their mutual accounts should thereafter be settled, and that the former, relying upon such understanding or assurance, did not bring an action on its account within the statutory period, and but for that it otherwise would have done so, the latter should not be allowed to invoke the statute of limitations in bar of former's account." (Page 304.)

In the case of *Haymore v. Commissioners*, 85 N. C. 268, following the case of *Daniel, Ex'r, v. The Board of Comm'rs of Edgecombe Co.*, 74 N. C. 494, it was said:

"Defendants will not be allowed to set up the statute of limitations in bar of the plaintiff's claim when the delay which would otherwise give operation to the statute *has been induced by the request of the defendants, expressing or implying their engagement not to plead it.*" (Syllabus.)

To the same effect see: *Mickey v. The Burlington Ins. Co.*, 35 Iowa, 174, 14 Am. Rep. 494; *Kenackowsky v. Board of Com'rs*, 122 Mich. 613, 81 N. W. 581; *Home Ins. Co. of Texas v. Myer*, 93 Ill. 271.

Complaint is made that attorneys' fees and taxes are not legitimate elements of damage in cases of this character. We are unable to ascertain from the record that either of these matters entered into the judgment of the district court, and therefore it will be unnecessary to consider the legal questions relating thereto. The judgment is affirmed.

All the Justices concurring.