No. 45,970

ARTHUR B. MAURER and MARY ELIZABETH FORD MAURER, His Wife, *Appellants,* v. J. C. NICHOLS COMPANY, et al., *Appellees.*

(485 P. 2d 174)

Opinion filed May 15, 1971.

*Elmer B. Hodges,* of Gage, Hodges, Kreamer & Varner, Kansas City, Missouri, argued the cause, and *Hugh H. Kreamer,* of Olathe, was with him on the brief for the appellants.

*John Anderson, Jr.,* of Overland Park, argued the cause, and *Lawrence R. Wagner,* of Roeland Park, attorney for appellees, R. Hugh Uhlmann, *et al.,* and *William V. McLeese* and *Thomas H. Smith,* of Kansas City, Missouri, attorneys for appellees, J. C. Nichols Co., *et al.,* were with him on the brief for the appellees.

The opinion of the court was delivered by

O'CONNOR, J.: This is a quiet title action to set aside a restrictive covenant prohibiting more than two residences on a tract of land located in Indian Hills subdivision, an exclusive residential area in Johnson county.

Plaintiffs (appellants), who are owners of a parcel of the original

tract, seek to be relieved from the burden of the covenant on the basis that dedication of a new street at the rear of the tract 29 years after the restriction was imposed created a condition not contemplated by the developer and removal thereof would not be detrimental to other properties in the subdivision. Arrayed against plaintiffs in this case are the J. C. Nichols Co., Indian Hills Homes Association, and landowners within the subdivision who, with but one exception, strenuously object to any cancellation or modification of the restriction claiming it was imposed for the benefit of all landowners in the subdivision and that there has not been any change in conditions justifying the relief sought.

The case was tried on stipulated facts, and from an adverse judgment by the district court, plaintiffs have appealed.

The two restrictions material to this case were contained in a warranty deed dated December 3, 1924, from the J. C. Nichols Investment Co. to Ruth White (plaintiffs' predecessor in title) conveying a tract of land consisting of five acres. The deed provided that any residence erected on the property must have at least 150 feet frontage on the proposed road (Indian Lane) and *not more than two residences were to be erected or maintained upon the property at any one time*. The deed also recited that each of the various restrictions would continue for a period of 25 years from July 19, 1921, and would automatically continue for successive 25-year periods unless the owners of the majority of the front footage of the entire subdivision into which the tract might be platted agreed to release any one or more of the restrictions by executing and recording an appropriate agreement at least 5 years prior to the expiration of the original 25-year period or any successive 25-year period thereafter.

The five-acre tract was later included with other lands in the original plat of Indian Hills subdivision and designated as Lot 6, Block 2. The plat discloses the property had a westerly frontage on Indian Lane of 303.04 feet with a maximum depth of approximately 600 feet extending easterly from Indian Lane.

A house was subsequently built on the north portion of the lot by Ruth White, and in 1945 plaintiffs acquired the entire tract from her. In 1953, plaintiffs joined in a replat of a portion of the subdivision creating a new street with *cul de sac* known as Wenonga Terrace along the back of their property. The tract was redesignated Lot E, Block 5 of Indian Hills. The J. C. Nichols Co. con-

veyed to plaintiffs a triangular strip of land adjoining Lot E on the southeast in order to provide them a frontage for the back of the lot of approximately 300 feet on Wenonga Terrace.

In March 1958 plaintiffs sought and obtained a judgment in the district court of Johnson county decreeing that because of the changed conditions brought about by the establishment of Wenonga Terrace the restrictions in the deed of December 3, 1924, did not prevent the erection of a residence on a tract fronting on Wenonga Terrace, provided it had a frontage of not less than 150 feet on said street. With respect to the prior action, the parties in the present case stipulated as follows:

"At the time of the filing of the action referred to in the preceding paragraph and prior to entry of the judgment therein authorizing a variance from the restrictions affecting the subject property, plaintiffs Arthur B. Maurer and Mary Elizabeth Ford Maurer, in person and by agent, did contact defendant R. Hugh Uhlmann, owner of the property adjoining the subject property on the south, and represented that the variance from restrictions requested in such action to permit the construction of a residence fronting on Wenonga Terrace *would in no wise affect or prejudice the restrictive covenant prohibiting more than two houses on the tract of land originally described as Lot 6, Block 2, Indian Hills; and that if a residence fronting on Wenonga Terrace was constructed in addition to the residence then existing on said lot, such residence would count toward the maximum number of two residences allowed under such restriction to be constructed on said premises.*" [Emphasis added.]

Four years later, in 1962, defendants, Richard J. and Edith M. Powell, became the owners of the southeastern portion of Lot E., consisting of approximately one acre fronting on Wenonga Terrace, and erected a residence thereon. The construction of the Powell residence resulted in there being two residences on what was the original five-acre tract.

Thereafter, plaintiffs contracted to sell the northern one-half of Lot E (approximately two acres), which included the residence built by Ruth White, to the Chandlers. This left plaintiffs with a vacant tract on the southern portion of Lot E of approximately two acres having a frontage of 192 feet on Indian Lane and on which they now seek the right to construct an additional residence.

Without making any attempt to secure release of the restriction in question by the method prescribed in the original deed (although consents to release could have been filed until July 19, 1966), plaintiffs instituted this action August 11, 1965. Plaintiffs' position is well stated in the following language of the petition:

"That by reason of the changed conditions aforesaid, the said limitation of

the number of residences which might be erected on said land originally constituting Lot 6 of Block 2 of Indian Hills, and presently constituting part of Lot E of Block 5 of Indian Hills, should not apply to a situation not contemplated by the parties thereto and should not limit the right of plaintiffs to erect an additional residence at the place originally contemplated in such restriction; and, unless the cloud created by said restriction is removed, it will prevent the use of the land involved to the best advantage of the owners thereof, and to the best advantage of the neighboring properties of which the defendants are or claim to be the owners."

The trial court, after considering the evidence, concluded that as a result of plaintiffs' actions and representations in their prior suit in 1958 in which they obtained a variance of the restrictions, "Plaintiffs do not now come before the court with completely 'clean hands' asking for another variance"; that there has been no change of conditions or change of character in the area so as to neutralize the benefits of the restriction and destroy its purpose; that the loss of economic gain by plaintiffs alone is not sufficient reason for changing or reforming the restriction; and that no valid reason in equity had been shown which would warrant the granting of affirmative relief.

Restrictive covenants have long been recognized in this state. These restrictions or equitable servitudes are based on the equitable principle of notice whereby a person who takes land with notice of a restriction upon it will not in equity and good conscience be permitted to act in violation of the restriction. However, the jurisdiction of equity to enforce restrictive covenants is not absolute. The right to enforce a restriction may be lost by laches, waiver, or acquiesence. In addition, equitable enforcement may also be denied when there has been a change in conditions so radical in nature as to neutralize the benefits of the restriction and destroy its purpose. (*Hecht v. Stephens,* 204 Kan. 559, 464 P. 2d 258; *Reeves v. Morris,* 155 Kan. 231, 124 P. 2d 488; *N. P. Dodge Corp. v. Calderwood,* 151 Kan. 978, 101 P. 2d 883; *Clark v. Vaughan,* 131 Kan. 438, 292 Pac. 783; *Hartman v. Wolverton,* 126 Kan. 613, 270 Pac. 584.)

The present action to cancel or modify a deed restriction as a cloud on title differs from the usual situation where enforcement of the restriction is sought in equity by injunction. In an injunctive action the court may, in a proper case, deny relief and remit plaintiffs to an action at law to recover damages for breach of the covenant. But, an action to nullify a restriction on a particular property for all time is far more drastic in result and, ordinarily, more is required to warrant a decree of cancellation than is neces-

sary when only the injunctive powers of equity are exercised. (*Fidelity Title & Trust Co. v. Lomas & Nettleton Co.*, 125 Conn. 373, 5 A. 2d 700; *Booker v. Old Dominion Land Co.*, 188 Va. 143, 49 S. E. 2d 314; 26 C. J. S., Declaratory Judgments, § 72; 20 Am. Jur. 2d, Covenants, Conditions, Etc., § 319; Anno. 4 A. L. R. 2d 1111, § 3-5.) In either event the same equitable principles apply and whether relief is granted rests within the sound discretion of the trial court.

Appellants' entire argument is bottomed on the changed condition brought about by the dedication of the new street at the rear of their property—a condition they say the original grantor never contemplated. Furthermore, they contend the restriction now existing presents an intolerable burden offset by no benefits whatsoever to the surrounding properties in that it prohibits the use of the two-acre site for a residence at the precise location contemplated when the restriction was originally imposed. Appealing as the argument may seem, we cannot overlook the fact that the situation in which appellants find themselves was mainly brought about by their own doing.

As we have already indicated, the right to enforce a restriction may be lost by conduct of the parties. By the same token, parties may be estopped by their prior actions and representations from invoking their right to cancel or modify a restriction.

Appellants purchased the five-acre tract on which a residence had been erected with full knowledge of the restriction prohibiting more than two residences on the property at any one time. After joining in the replat of the subdivision in which Wenonga Terrace was created, thereby providing street frontage for the back of their property, plaintiffs pursued a course of conduct ostensibly designed to thwart the terms of the restrictions originally imposed by dividing the tract into three building sites. They proceeded to file an action in district court and obtained a variance of the frontage restriction in order to permit the construction of a residence facing on Wenonga Terrace. Apparently to allay any fears of surrounding property owners, plaintiffs contacted their neighbor to the south, R. Hugh Uhlmann, prior to entry of judgment, and represented to him that the variance requested would not affect or prejudice the restriction against more than two residences on the lot. This assurance evidently proved satisfactory to all concerned and a default judgment was duly entered by the district court. Within a year plaintiffs

sold the tract on which the Powells subsequently constructed a residence. Further division of the original tract was accomplished when plaintiffs sold the north one-half containing the Ruth White residence to the Chandlers. Now, plaintiffs return to court and ask for further relief from the restriction in order to provide a homesite on the remaining two acres.

The plain facts would indicate that plaintiffs helped bring about a changed condition, of which they were able to take partial advantage as the result of the representations made in the first law suit, and now seek to take full advantage of the situation. At the time the representations were made to Uhlmann, plaintiffs were fully aware that only two residences on the entire tract were permitted. Notwithstanding, they made no effort to have the restriction removed, but proceeded to obtain only the variance requested without objection by Uhlmann or the other landowners, who had every reason to believe that plaintiffs were going to be content with the two-residence requirement even if a house fronting on Wenonga Terrace were subsequently constructed. The district court was fully justified in recognizing that plaintiffs' prior conduct had seriously weakened their position in the eyes of the court.

The doctrine of equitable estoppel is said to be based upon the principle that a person is held to a representation made or a position assumed where otherwise inequitable consequences would result to another who, having the right to do so under all the circumstances, has in good faith relied thereon. (*Board of County Commissioners v. Brown*, 183 Kan. 19, 325 P. 2d 382; *Gas Service Co. v. Consolidated Gas Utilities Corp.*, 145 Kan. 423, 65 P. 2d 584.) Under the facts disclosed in the record, we must conclude that application of the doctrine is warranted and plaintiffs are estopped from obtaining the relief requested.

The judgment is affirmed.