No. 48,606

GEORGE BOWEN AND FARMERS INSURANCE GROUP, *Appellants*, v. W. H. WESTERHAUS d/b/a WESTERHAUS MOTOR COMPANY and UNIVERSAL UNDERWRITERS INSURANCE CO., *Appellees.*

(578 P.2d 1102)

Opinion filed May 6, 1978.

*David S. Knudson,* of King, Stokes, Knudson & Nitz, Chartered, of Salina, argued the cause and was on the brief for the appellants.

*Christopher Randall,* of Turner, Hensley & Boisseau, Chartered, of Great Bend, argued the cause and was on the brief for Universal Underwriters Insurance Company, appellee. *John V. O'Donnell,* of Ellsworth, was on the brief for W. H. Westerhaus d/b/a Westerhaus Motor Company, appellee.

The opinion of the court was delivered by

FROMME, J.: The plaintiffs appeal from a summary judgment entered by the trial court. The trial court concluded the action was barred by the statute of limitations. The plaintiffs claim the defendants were estopped from defending on the basis of the statute of limitations.

The claim arose from the following facts gleaned from the pleadings, depositions and correspondence between the parties, which correspondence became part of the depositions of the parties.

George Bowen and his insurer, Farmers Insurance Group, brought an action against a garage owner, W. H. Westerhaus, and his insurer, Universal Underwriters Insurance Company. Bowen left his car with Westerhaus for repairs. The Westerhaus garage caught fire and the car was destroyed on January 4, 1971. Bowen was paid by his insurer, Farmers, for the loss of the car. Farmers became subrogated under the policy to Bowen's damage claim against Westerhaus. Demand was made upon Westerhaus and the demand was turned over to his insurer, Universal. Universal wrote to Farmers requesting a proof of loss be filed with supporting papers. On March 31, 1971, Farmers submitted the proof of loss to Universal. Farmers requested a status report regarding the claim in May. In June Universal responded and advised Farmers there was some dispute between Universal and Travelers Insurance Company over primary coverage. Universal advised that this dispute was being decided by the insurance commissioner. Letters requesting a status report were sent by Farmers to Universal in September, October and December.

Across the face of the December letter sent by Farmers, Universal made a handwritten response which states: "Suit has been filed to determine whether our company or Travelers policy apply." Thereafter Farmers received no response from Universal to its letters requesting status reports on their $5,005.99 subrogation claim until November, 1972.

On November 16, 1972, Universal wrote a long letter to Farmers in which it apologized for failure to answer Farmers' letters and explained that a wrong claim number had been used and the letters had become temporarily misplaced. Universal attached copies of papers indicating that the other insurance company, Travelers, had issued a second garage keeper's liability policy to Westerhaus. Universal further stated:

". . . We, therefore, contend that both Travelers and UUIC [Universal] had GKLL coverage in effect on the date of loss, 1-4-71.

"We have always been ready to pay our half of your loss, or $2,503.00 but Travelers has been unwilling to pay their half. . . ."

In this letter Universal went on to explain the position being taken by Travelers, and indicated that Universal was in the process of filing a declaratory judgment action against Travelers to establish the respective liabilities of the two companies. In concluding the letter to Farmers, Universal stated:

". . . Considering the above, we are sure that you can understand*ing* our dilemma in that we want to pay our half of the losses involved, but do not know how we can do this as we could not obtain a release for our insured for 50% of the loss. Unfortunately, this will probably force litigation on the unwilling parties since it is doubtful that the DJ can be concluded within the next few weeks. We would appreciate your thoughts in regard to this problem."

On November 28, Farmers responded to the letter and advised Universal that it would advise Travelers of its claim and attempt to elicit cooperation. Correspondence between Farmers and Universal concerning the status of the declaratory judgment action against Travelers continued through 1973. Universal advised it anticipated trial within that year.

However, on December 11, 1973, Universal advised Farmers that the declaratory action was still pending and it hoped to get an answer within ninety days. The three-year statute of limitations expired on January 4, 1974. Six months elapsed, during which time Farmers wrote two letters to Universal. In the last letter it referred to a previous telephone conversation, the substance of which is not disclosed in the record.

Farmers requested that Universal advise as to Universal's position regarding the claim. On June 20, 1974, Universal advised Farmers that the court's decision in the declaratory judgment action was adverse to Universal. In this letter Universal further advised Farmers:

". . . I believe Kansas has a three-year statute of limitation provision for contractual obligations. In view of that fact, the statute has run on your claim. Since the statute has *tolled,* I must respectfully decline payment of your subrogation claim."

The two insurance companies are the real parties in interest in the matter and although Bowen and Westerhaus were named as parties plaintiff and defendant along with their respective insurers we will refer to the parties bringing the suit as Farmers and the parties defending the suit as Universal. On November 9, 1974, Farmers filed suit alleging liability on the part of Universal as the insurer of Westerhaus for the covered loss of Bowen's car. Farmers alleged that Universal engaged in acts and conduct to procure plaintiff's delay of this litigation for the purpose of pursuing a declaratory judgment action against a third party; that relying upon the acts and conduct of Universal plaintiff was induced to

delay filing its claim in court until after the statute of limitations had run; that Universal had always acknowledged and agreed to pay one-half of plaintiff's loss in the amount of $2,503.00, but requested delay in filing any claim until Universal could conclude the declaratory judgment action; and that Universal was estopped from asserting that the claim is barred by the Kansas statute of limitations.

Universal answered admitting that Bowen's car was destroyed by fire through the negligence of the employees while being repaired in Westerhaus' garage and the car had a reasonable market value of $5,005.99. Universal stated that its offer to pay one-half of the claim had been refused by Farmers; it denied it ever requested delay in filing plaintiff's claim; and it alleged that plaintiff's claim was barred by the statute of limitations.

After the pleadings were filed and depositions taken the trial court scheduled a pretrial conference to define the controverted issues. Prior to the conference the defendants filed a motion for summary judgment. The pretrial conference was never held. Instead the court heard arguments on the motion then took the matter under advisement and later entered summary judgment for defendants.

In considering a motion for summary judgment a trial court must give to a litigant against whom judgment is sought the benefit of all inferences that may be drawn from the admitted facts under consideration. (*Timi v. Prescott State Bank,* 220 Kan. 377, Syl. ¶ 2, 553 P:2d 315 [1976].) A court should be cautious in granting a motion for summary judgment when resolution of the dispositive issue necessitates a determination of the state of mind of one or both of the parties. (*Henrickson v. Drotts,* 219 Kan. 435, 438, 548 P.2d 465 [1976].) Whether a party acts in good faith depends not only on the facts and circumstances but also on his state of mind.

Under the facts disclosed by the pleadings in this case the three-year statute of limitations for an action brought on contract (see *Continental Ins. Co. v. Windle,* 214 Kan. 468, 520 P.2d 1235 [1974]) would have expired on or about January 4, 1974. The plaintiffs pled that defendants were estopped to take advantage of the statute. The doctrine of equitable estoppel is based upon the principle that a person is held to a representation made or a position assumed when otherwise inequitable consequences

would result to another who, having the right to do so under all the circumstances, has in good faith relied thereon. (*Maurer v. J.C. Nichols Co.*, 207 Kan. 315, 485 P.2d 174 [1971].)

This court has further said:

"The doctrine of equitable estoppel requires consistency of conduct, and a litigant is estopped and precluded from maintaining an attitude with reference to a transaction involved wholly inconsistent with his previous acts and business connection with such transaction." (*Browning v. Lefevre*, 191 Kan. 397, Syl. ¶ 2, 381 P.2d 524 [1963].)

". . . One who asserts an estoppel must show some change in position in reliance on the adversary's misleading statement. . . ." (*In re Morgan*, 219 Kan. 136, 137, 546 P.2d 1394 [1976].)

". . . Equitable estoppel is the effect of the voluntary conduct of a person whereby he is precluded, both at law and in equity, from asserting rights against another person relying on such conduct. A party asserting equitable estoppel must show that another party, by its acts, representations, admissions, or silence when it had a duty to speak, induced it to believe certain facts existed. It must also show it rightfully relied and acted upon such belief and would now be prejudiced if the other party were permitted to deny the existence of such facts. . . ." (*United American State Bank & Trust Co. v. Wild West Chrysler Plymouth, Inc.*, 221 Kan. 523, 527, 561 P.2d 792 [1977].)

A case close to the present case is *Cole v. City of Kanopolis*, 159 Kan. 304, 153 P.2d 920 (1944). That case went to trial to the court which found for the defendant and held the statute of limitations had run. This court reversed. The plaintiffs owned bonds, issued by the defendant city, which were due in 1933. When these bonds reached maturity, the defendant sought to issue refunding bonds, which it delivered to its authorized agent to sell. The agent was to take up the outstanding bonds of the original issue. However, the agent embezzled some of the bonds. This gave rise to litigation. Defendant represented to plaintiffs that when the litigation was completed, arrangements would be made to take care of their bonds. After the litigation was completed, the city clerk wrote each of the plaintiffs a letter on July 19, 1938, which advised the bondholders to bring a "friendly suit" against the city in order to liquidate the bonds in a legal manner. The letter advised that the city was without funds and had to work out some legal manner of payment. Plaintiffs filed their action July 13, 1943. The city answered, pleading that the statute of limitations began to run on October 2, 1933, when the bonds were due. Plaintiffs replied that defendants were estopped from pleading the statute of limitations.

This court in that case reversed the holding of the trial court and said:

". . . We think it quite clear that the city is estopped from contending that the statute of limitations began to run on October 2, 1933. The city in good faith was attempting to refund its outstanding issue of bonds, including the particular bonds in suit, but had been unfortunate in selecting an agent who embezzled some of the bonds, and naturally desired to recover from that source if possible. In the meantime the general scope of its letters to the holders of the bonds was that the bonds were not being repudiated, but would be paid when the litigation was through. . . ." (p. 307.)

Another similar case is *Railway Co. v. Pratt,* 73 Kan. 210, 85 Pac. 141 (1906). There the title to land was in dispute. The appellant railway company held a patent to the land from the United States. The land was also claimed by one Ard as a settler under the homestead and pre-emption laws. The railway conveyed the land to the appellee, Pratt. Much correspondence went on between appellant and appellee during the litigation which followed. On February 18, 1898, the railway company advised Pratt they had included his lands in the list of lands for which the company would have to refund the purchase price. However, the company was awaiting the court decision with reference to the lands:

". . . If your title is made good, there is nothing then due you from the company; if, on the other hand, your title is not made good, we certainly will have to refund you the money, I suppose. But you ought to wait patiently, as the others are doing, until this litigation is determined. . . ." (p. 214.)

Further correspondence ensued, including a letter of June 28, 1901, again asking Pratt to await a final determination of pending cases, ". . . then we will determine what course we will pursue with reference to your claim for a refund of the money."

The railway company then refused to refund the purchase price of the land. In a district court action against the company Pratt recovered $1,760.36 on January 8, 1904. The railway company appealed, claiming the cause of action was barred by the statute of limitations. This court held the defense of the statute of limitations was not available to the company. The court noted that when the conveyance was made both parties knew Ard would have to be judicially ousted. They understood that if the deed conveyed anything to Pratt this could only be determined after litigation, and both parties evidently intended to await the judicial determination. The court stated:

". . . Up to that time Pratt waited patiently, at the request of the plaintiff in error, while it was testing its title to the land in long and repeated lawsuits. He was assured from time to time that his title would be ultimately sustained, that Ard did not have 'a ghost of a show,' and was requested to 'wait patiently, as the others are doing, until this litigation is determined.'

"The plaintiff in error assumed control of the case commenced by Pratt, and carried it to the highest court, apparently confident of success. Pratt was at times urgent and insistent, but was pacified by the assurance that 'our company is waiting to see what the decision of the circuit court will be with reference to these lands; if we win, we owe you nothing; if not, you will get your money.' It is not suggested that Pratt failed in any respect to do his full duty in the premises. . . . After Pratt has so waited, and the company after full opportunity to test its claim has failed, it would be unconscionable for it to assert the very delay which it requested for the purpose of avoiding payment to Pratt of the money paid by him, for which he has received nothing. The ordinary rules of justice and fair dealing rebel at the suggestion. The facts furnish abundant reason for the application of the rule of estoppel to such conduct. We think this is a case where this rule should be applied." (pp. 217, 218.)

A factual situation similar to our present case was presented in *Safeway Stores v. Wilson,* 190 Kan. 7, 372 P.2d 551 (1962), where a claim arose from the collision of two trucks. A claim was presented but defendant kept postponing payment of the claim for damage to plaintiff's truck until a personal injury claim had been determined. Further delay occurred by reason of defendant's request for further documentation of plaintiff's proof of loss. After the period of the statute of limitations had passed the defendant declined payment of the property loss claim. The plaintiff sued and claimed the defendant was equitably estopped from asserting the bar of the statute of limitations. Plaintiff recovered and on appeal to this court it was held:

". . . [T]his court is of the opinion appellants' continued requests for delay until the personal injury suit was determined, the offer to pay the actual cost of repairs to the truck, and the request for further information as to damages for loss of use of that vehicle, were sufficient to lull appellee into a sense of security preventing it from filing the instant action before the running of the statute of limitations." (p. 14.)

There can be no doubt under proper facts a party can be equitably estopped from reliance on the statute of limitations as a defense to the claim against him. The type of conduct which is sufficient to give rise to an estoppel generally raises a question of fact unless the facts are stipulated or depend upon the interpretation of unambiguous written documents. (39 A.L.R.3d, Statute of Limitations — Negotiations, p. 127.)

In the present case the parties did not stipulate the facts. The

letters which passed between the parties were in documentary form but there appears to have been a misunderstanding conveyed by the wording in the letters. Defendants contend the plaintiffs knew or should have known from the correspondence that the declaratory judgment action would not be completed until after their claim would be barred. Defendants further argue they never specifically requested that plaintiffs delay filing the claim. They point to one of the letters in which they stated the delay would probably force litigation on the "unwilling parties." Defendants further contend they made several offers to pay plaintiffs one-half of their claim and plaintiffs refused to accept the same.

The plaintiffs, on the other hand, argue that defendants represented they would pay the claim as soon as the declaratory judgment action was terminated, that plaintiffs relied in good faith thereon, that the offer to pay one-half of the claim was an affirmative inducement to delay filing, that plaintiffs never refused to accept such payment, and that inequitable consequences would result to them unless equitable estoppel is applied.

In *Safeway Stores v. Wilson,* supra, it is said:

"There is no definite rule governing estoppel which can be applied to every situation. There are few, if any, relationships, of which the law takes cognizance, which are not effected to some degree by the principles of estoppel. Since the principle of equitable estoppel runs through all transactions it cannot be determined by any fixed or definite rule. Where the question is raised each case must be determined on its own individual facts." (p. 12.)

Under the pleadings, depositions and letters on file, taken in the light most favorable to the plaintiffs, we hold it was error for the trial court to conclude as a matter of law there was no genuine issue as to any material fact and enter judgment on the pleadings, depositions and written documents.

Plaintiffs further claim the defendant's letter of November 16, 1972, constituted an acknowledgment under K.S.A. 60-520(*a*) to pay an existing liability which extended the statute of limitations. We do not agree. An acknowledgment which will remove the bar of the statute of limitations must be distinct, unequivocal, and without qualification, and nothing less than a direct admission of a present existing liability is sufficient. (*Dechand Roofing & Supply Co. v. Schumaker,* 174 Kan. 82, Syl. ¶ 2, 254 P.2d 326 [1953].)

However, on the question of estoppel the summary judgment is reversed and the case is remanded for further proceedings.

OWSLEY, J., dissenting: I dissent. While I fully agree with the principles of law enunciated in the majority opinion, I do not feel they apply to the facts of this case. Here we have a claim dispute between two insurance companies. Over the course of three years the companies corresponded between one another as to the status of the claim. The defendants admitted liability for one-half of plaintiffs' claim but stated their liability for the other half depended on the outcome of a declaratory judgment between defendants and another insurance company. This was an explanation of why payment to plaintiffs was delayed. The statements of defendants were not fraudulent, misleading or deceptive. Defendants did not induce or attempt to induce plaintiffs to delay filing their cause of action. Insurance companies are specialists in the field of claims and litigation. In the absence of a strong showing of inducement, plaintiffs should not be permitted to rely on equitable estoppel to vary the statute of limitations.

Equitable estoppel is not available to one who because of his own acts or failure to act has suffered a loss. Equity aids the vigilant and not those who slumber on their rights. (See, *Younger v. Estate of Younger,* 198 Kan. 547, 426 P.2d 67 [1967]; *Rex v. Warner,* 183 Kan. 763, 332 P.2d 572 [1958].)

The decision of the trial court should have been affirmed.

MCFARLAND, J., joins the foregoing dissenting opinion.