**PETROLEUM PRODUCTS, INC., Plaintiff,**

v.

**TOTAL PETROLEUM, INC., Defendant.**

**Civ. A. No. 90–1290–T.**

United States District Court, D. Kansas.

May 5, 1992.

Dan W. Forker, Jr., Reynolds, Peirce, Forker, Suter & Rose, Hutchinson, Kan., for plaintiff. ·

Donald W. Bostwick, Adams, Jones, Robinson & Malone, Wichita, Kan., for defendant.

## MEMORANDUM AND ORDER

THEIS, District Judge.

This matter is before the court on the defendant's motion for summary judgment (Doc. 15). The defendant argues that plaintiff's claim is barred by the statute of limitations. In response to the motion for summary judgment, plaintiff does not dispute that the statute of limitations has expired on its claim. Rather, the plaintiff argues that the defendant is equitably estopped from asserting the statute of limitations.

The court is familiar with the standards governing the consideration of a motion for summary judgment. The Federal Rules of Civil Procedure provide that summary

judgment is appropriate when the documentary evidence filed with the motion "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A principal purpose "of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses...." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The court's inquiry is to determine "whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

■ The burden at the summary judgment stage is similar to the burden of proof at trial. The court must enter summary judgment, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552. The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact on its claim. Rule 56, however, imposes no requirement on the moving party to "support its motion with affidavits or other similar materials *negating* the opponent's claim." *Id.* at 323, 106 S.Ct. at 2553 (emphasis in original). Once the moving party has properly supported its motion for summary judgment, the nonmoving party may not rest upon mere allegations or denials contained in the nonmoving party's pleadings, but must set forth specific facts showing a genuine issue for trial, relying upon the types of evidentiary materials contemplated by Rule 56. Fed.R.Civ.P. 56(e). Each party must demonstrate to the court the existence of contested facts on each claim it will have to prove at trial. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553. The court reviews the evidence on summary judgment under the substantive law and based on the evidentiary burden the party will face at trial on the particular claim. *Anderson*, 477 U.S. at 254, 106 S.Ct. at 2513.

■ At the summary judgment stage, the judge's function is not to weight the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2510–11. Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are functions of the finder of fact, not the functions of the judge when ruling on a motion for summary judgment. The evidence of the nonmoving party is to be believed. All justifiable inferences are to be drawn in favor of the nonmovant. *Id.* at 255, 106 S.Ct. at 2513–14.

The following facts are uncontroverted.

1. Petroleum Processing, Inc., and Total Petroleum, Inc. (Total) entered into a Letter of Agreement dated May 23, 1980, for the processing of normal butane at a butamer facility (or iso plant) to be constructed and installed by Petroleum Processing, Inc. The Letter of Agreement was amended by letter dated August 1, 1980.

2. The execution of the May 23, 1980 Letter of Agreement was an inducement to build the iso plant. Construction of the iso plant commenced in approximately December 1980.

3. The iso plant became operational and Total delivered normal butane in approximately January 1982.

4. By virtue of assignments and name changes, plaintiff Petroleum Products, Inc. (PPI) has succeeded to all rights of Petroleum Processing, Inc. in connection with the May 23, 1980 contract and all amendments. PPI formerly did business as Burke Energy Corporation, but the name was changed to PPI in 1986.

5. The last delivery of normal butane by Total and the last redelivery of isobutane by PPI pursuant to the May 23, 1980 Letter of Agreement occurred on or about December 26, 1985.

6. The May 23, 1980 Letter of Agreement does not provide for the payment by Total of any transportation fees or tariffs to PPI for the use of any pipeline, and does not include any provision establishing the amount of any transportation fee or tariff for the use of any pipeline.

7. At the time the May 23, 1980 Letter of Agreement was signed and at the time it was amended in August 1980, no pipeline had yet been constructed for delivery of normal butane to PPI's iso plant.

8. During the negotiation of the May 23, 1980 Letter of Agreement, there was no discussion about transportation of the butane or about what pipelines might be made available for delivery of normal butane to the iso plant.

9. Subsequently in late 1981, a small pipeline (approximately one-half mile in length) was constructed between PPI's iso plant and a fractionator owned by Mid America Pipeline (Mapco) located directly adjacent to the iso plant. The pipeline was installed and financed by Mapco, although PPI has since reimbursed Mapco. There is a dispute between Mapco and PPI as to the ownership of the pipeline.

10. By letter of June 8, 1983, PPI first attempted to charge Total for pipeline transportation charges by submitting to Total Invoice No. 6718 dated June 8, 1983.

11. Total did not pay the June 8, 1983 invoice, but instead deducted $10,365.58 as an "Improper Transportation Offset."

12. PPI objected to Total's refusal to pay the transportation invoice and to Total's deduction of the $10,365.58.

13. On October 7, 1983, Total filed an action in the United States District Court for the District of Kansas, Civil Action No. 83–1888, entitled *Total Petroleum, Inc. v. Burke Energy Corporation and Petroleum Processing, Inc.* The action sought a declaratory judgment concerning the validity of the May 23, 1980 Letter of Agreement, as amended.

14. On or about October 14, 1983, Burke Energy Corporation and Petroleum Processing, Inc. (now PPI) filed their answer and counterclaim in Civil Action No. 83–1888. In paragraph 10M of the counterclaim, PPI alleged that: "[PPI] in transporting product for [Total] to and from the tailgate of its plant to MAPCO has incurred a transportation charge of $10,-365.58, which [Total] is obligated to pay." PPI also included as a prayer to the counterclaim: "That this Court enter an order declaring that [Total] has wrongfully set off $10,365.58 of transportation expenses incurred by [PPI], and thereupon to enter a mandatory injunction requiring [Total] to pay [PPI] such amount."

15. Total, in its reply in Civil Action No. 83–1888, denied the allegations of paragraph 10M of PPI's counterclaim.

16. Throughout the remainder of 1983 and 1984, Total and PPI exchanged numerous letters concerning PPI's attempt to charge Total with a pipeline transportation charge or tariff. The correspondence includes:

a. Letter from PPI dated December 22, 1983, indicating that the matter of the freight rate on the use of the pipeline from Mapco's fractionator to the iso plant has never been paid by Total "as these costs are outside the agreement."

b. Letter from PPI dated January 16, 1984, enclosing an invoice for transportation charges for the pipeline for the month of December 1983 and noting that "the Agreement, dated 23 May 1980 between our two companies does not speak to this subject."

c. Letter from Total dated January 16, 1984, stating that: "As to the imposed tariffs by Burke Energy for Total Petroleum's supposed use of Burke Energy's private pipeline, it is inconceivable that an isomerization facility would be built out in a field without necessary pipeline connections; therefore, it is assumed by Total Petroleum that the processing fee must cover all related construction costs for necessary pipelines...."

d. Letter from PPI dated January 26, 1984, concerning invoices for transportation charges and tariffs.

e. Letter from Total dated January 30, 1984, stating that "Total Petroleum, Inc.

does not have a contract, and has not agreed to pay pipeline tariffs," disputing the invoices for such charges, and stating that those invoices will not be paid. The letter also states that "It has been my experience that pipeline tariff charges are posted in advance and all charges are known and contracted for in advance of any movement."

f. Letter from PPI dated January 31, 1984, stating that nothing in the contract required PPI to construct pipelines from the iso plant back to Mapco's fractionator and that nothing in the contract says that PPI will do this "free gratis."

g. Letter from Total dated February 10, 1984, concerning an invoice for January transportation charges and stating that "In order to avoid future reconciliation problems, I thought you should be aware that this invoice is in dispute, and will not be paid."

17. By order of December 6, 1984, in Civil Action No. 83–1888, the Honorable Patrick F. Kelly dismissed Total's complaint and PPI's counterclaim for lack of prosecution, without prejudice.

18. The president of PPI testified that Civil Action No. 83–1888 "went away because the timeliness of it for Total became moot," and he recognized that PPI's counterclaim was never dealt with at all.

19. After the May 23, 1980 Letter of Agreement had expired at the end of 1985, PPI sent Total Invoice No. 19891 dated January 30, 1986, which covered transportation charges for the entire period from January 27, 1982 through December 26, 1985, in the total amount of $80,671.19. Certain of the charges included in this invoice are amounts which had been the subject of prior invoices in 1983 and 1984 and cover the same transportation charges as those prior invoices. This invoice also includes the transportation charges which had been the subject of PPI's counterclaim in Civil Action No. 83–1888.

20. By letter of February 11, 1986, Total addressed the invoice for transportation charges and certain litigation then pending between PPI and Mapco whereby PPI was seeking reimbursement of any tariffs already paid to Mapco. Total refused to consider the January 30, 1986 invoice until the litigation between PPI and Mapco had been concluding, stating that "Only at that time can Total determine if any tariff's [sic] at all are due to [PPI]."

21. By letter of July 21, 1986, PPI provided Total with a recap of the tariffs in the amount of $80,671.19 and provided copies of certain proceedings before the Kansas Corporation Commission involving the dispute between PPI and Mapco.

22. By order dated August 31, 1984, in Docket No. 141, 610–R, the Kansas Corporation Commission (KCC) addressed claims by Burke Energy (now PPI) against Mapco that PPI owned the pipeline between the iso plant and the Mapco fractionator and that Mapco was not entitled to transportation charges for such line. The KCC found that it did not have statutory authorization to make binding adjudications concerning the ownership of the pipeline. As to Mapco's charges for use of the pipeline, the KCC found that Mapco had failed to file a tariff for the pipeline at any time prior to January 17, 1983, and that PPI might have a claim for reimbursement of any rates paid from the commencement of service in January 1982 until Mapco made its first tariff filing effective January 17, 1983.

23. Burke Energy Corporation (now PPI) has filed an action in the District Court of McPherson County, Kansas, Case No. CI 4230, entitled *Burke Energy Corporation v. Mapco Underground Storage, Inc. et al.*, seeking: (1) an order quieting PPI's title to the pipeline between the iso plant and the Mapco fractionator; and (2) recovery of the value of butane taken by defendants to pay for transportation charges of PPI. That action remains pending and undecided.

24. PPI's counsel sent a demand letter to Total dated March 8, 1988, demanding payment of the tariff charges in the amount of $80,671.19.

25. Total responded by letter of March 15, 1988, stating, "Our position always has been and continues to be that the tariff claim is unfounded for several reasons."

In its motion for summary judgment, defendant Total argues that PPI's claim is barred by the applicable statute of limitations. The May 23, 1980 Letter of Agreement does not provide for the payment of pipeline transportation charges or tariffs and does not include any provision establishing the rate or amount of any such transportation fee or pipeline tariff. *See* Pretrial Order, Doc. 24, Stipulation H. Therefore, if any agreement was reached by the parties concerning transportation charges, that agreement is one which is express or implied but not in writing and the three year statute of limitations found in K.S.A. 60-512(1) applies. PPI does not dispute that the statute of limitations has expired on its claim. PPI asserts, based only on the February 11, 1986 letter from Total to PPI, that Total should be estopped from relying on the statute of limitations.

The February 11, 1986 letter from Total to PPI provides in relevant part:

We believe that it is only prudent business practice on our part to wait until a final nonappealable order has been issued in Burke's litigation with Mapco before seriously considering the referenced invoice. Only at that time can Total determine if any tariff's [sic] at all are due to Burke.

Please be advised that in the event Burke is found liable to Mapco for the tariffs, Total stands ready, willing and able to reimburse Burke for which it may be liable under our isobutane processing agreement.

Doc. 17, Tab 4, p. 96.

■ Under Kansas law, one who makes representations that lull another party into a false sense of security or cause the injured party not to pursue a claim and thus allow the statute of limitations to run will be estopped to plead the statute of limitations when the injured party files suit. *Miller v. Foulston, Siefkin, Powers & Eberhardt*, 246 Kan. 450, 469, 790 P.2d 404 (1990). The party asserting equitable estoppel must show some change in position in reliance on the other party's misleading statements. *Id.* (quoting *Bowen v. Westerhaus*, 224 Kan. 42, 46, 578 P.2d 1102

(1978)); *see also In re Morgan*, 219 Kan. 136, 137, 546 P.2d 1394 (1976).

■ The type of conduct which is sufficient to give rise to an estoppel generally raises a question fact, unless the facts are stipulated or depend upon the interpretation of unambiguous written documents. *Bowen v. Westerhaus*, 224 Kan. 42, 48, 578 P.2d 1102 (1978). When there are no issues of fact to submit to the jury, whether the facts as stipulated constitute estoppel to assert the statute of limitations is a question of law. *Safeway Stores, Inc. v. Wilson*, 190 Kan. 7, 11, 372 P.2d 551 (1962).

■ The issue before the court is whether the plaintiff's claim of equitable estoppel must be rejected as a matter of law or whether there are genuine factual issues that require presentation to the finder of fact. In this regard, the critical issue is whether the plaintiff can show that it actually relied upon the representations made in the February 11, 1986 letter.

Plaintiff has not come forward with any evidentiary materials to support its allegation that it relied to its detriment on the February 11, 1986 letter from Total. The record indicates that even after plaintiff received this letter from Total, it continued to attempt to collect the transportation charges. On July 21, 1986, PPI sent Total a recap of the pipeline charges PPI was claiming. In the cover letter, PPI stated that it wished to avoid litigation. The record reflects that PPI took no further action until March 1988. On March 8, 1988 PPI sent a demand letter to Total. The letter requested a response within five days or litigation would be commenced. Total responded by denying liability for the pipeline charges. However, PPI did not file suit until May 4, 1990. The record before the court indicates that PPI was not induced by Total to delay filing suit. As a matter of law, PPI cannot establish its claim of equitable estoppel. Accordingly, Total's motion for summary judgment shall be granted.

IT IS BY THE COURT THEREFORE ORDERED that defendant's motion for

summary judgment (Doc. 15) is hereby granted.